**Valerie Commerford LEVIN, Plaintiff-Respondent,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant,**
**and**
**Terrence L. Govero, Defendant-Respondent.**

**No. 58435.**

Supreme Court of Missouri,
En Banc.

June 10, 1974.

Thurman, Nixon, Smith, Howald, Weber & Bowles, Robert Lee Smith, Hillsboro, for plaintiff-respondent.

Kortenhof & Ely, Joseph M. Kortenhof, Frank E. Strzelec, St. Louis, for defendant-appellant.

SEILER, Judge.

The question presented is whether an automobile liability insurer terminates its liability for further interest on a judgment which exceeds the policy limits, by paying into court the limit of its coverage, without at the same time paying accrued interest and costs.

This is a suit against defendant insurer State Farm Mutual Automobile Insurance Company to compel it to continue paying

interest on plaintiff's $90,000 judgment against its insured, Govero, despite the fact that State Farm had deposited its $25,000 bodily injury coverage into court. Summary judgment was entered for plaintiff by the trial court. State Farm appealed to the court of appeals, St. Louis district, where the judgment was affirmed. The case is before us, having been transferred after opinion under rule 83.03, V.A.M.R. We decide the case as though here on original appeal and reverse and remand with directions.

On March 31, 1968, plaintiff was injured while riding in an automobile driven by defendant Govero which collided with a vehicle driven by Paul Kreitler. Plaintiff, then an unmarried minor, sued Govero and Kreitler through her father as next friend. On February 7, 1969, the jury returned a $90,000 verdict against both defendants and judgment was entered accordingly.

On April 15, 1969, 67 days after entry of judgment, State Farm deposited with the circuit clerk the sum of $25,000. In an accompanying letter, State Farm stated: "This tender is made in full payment of the limits of liability of this company applicable to the vehicle operated by the defendant Terrence L. Govero . . ." The letter continued, saying State Farm did not itself intend to pursue an appeal in the case, but would, pursuant to the terms of its policy, take the appeal on behalf of defendant Govero.

The judgment against both Govero and Kreitler was affirmed February 11, 1971.[1] The $25,000 fund was released on March 1, 1971, to plaintiff, who by then was an adult. At the same time Kreitler's insurer paid $10,000 plus interest thereon to plaintiff, reducing the unsatisfied part of the judgment to $55,000.

Plaintiff then filed this suit against Govero and State Farm, seeking interest on the $25,000 fund deposited with the court from the date of judgment to the date of its release to plaintiff and also for interest on the $55,000 unsatisfied portion of the judgment from the date of the judgment until the interest was paid. The circuit court entered summary judgment for plaintiff for $14,578 against State Farm and from this judgment State Farm appeals.

State Farm concedes it is obligated by its policy to pay all interest accruing on the entire judgment, even though that amount exceeds the $25,000 limit of its bodily injury coverage, until such time as it pays or tenders the amount of its liability on the judgment. State Farm thus acknowledges that it remains liable for interest that accrued during the 67-day period after rendition of the original judgment and before the $25,000 fund was deposited with the court. State Farm contends its liability for further interest ended April 15, 1969, when the policy limit of $25,000 was deposited with the circuit clerk.

The State Farm policy, in the "Declarations" portion, limits the liability Coverage A, the bodily injury coverage, to $25,000 for each person and $100,000 for each accident. The policy also contains the following provisions:

"(1) . . . Limits of Liability . . . Coverage A. The limit of liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages arising out of bodily injury sustained by one person in any one accident, and subject to this provision, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all such damages for bodily injury sustained by two or more persons in any one accident.

" . . .

"(2) As respects the insurance afforded under coverages A and B and in addition to the applicable limits of liability to pay:

(a) costs taxed against the insured in any such suit and, after entry of judgment,

1. Commerford v. Kreitler, 462 S.W.2d 726 (Mo.1971). On March 5, 1974, State Farm paid its share of the court costs.

all interest accruing on the entire amount thereof until the company has paid or tendered such part of such judgment as does not exceed the limit of the company's liability thereon;

(b) premiums on bonds [referring to attachment, appeal and bail] . . .

(c) expense incurred by the insured [referring to emergency medical and surgical relief to others] . . .

(d) reasonable expense incurred by the insured at the company's request [referring to loss of wages and salary up to $25 per day because of court attendance . . ."[2]

Plaintiff contends that State Farm did not cut off its liability for further interest by its payment into court of $25,000 because State Farm failed to include in the amount, court costs and interest accrued as of the date of payment. There is no question that $25,000 is the limit of State Farm's liability for bodily injury for any one person. The question is whether the language of the policy provision referring to payment of interest until the company has paid such part of the judgment as does not exceed the "limit of the company's liability thereon" has reference to the limits of liability for bodily injury under the policy, as appellant contends, or to State Farm's entire obligation under the policy, as plaintiff contends, which would necessarily include in addition to the judgment, such items, expenditures, and obligations as costs, interest, bond premiums, emergency

medical expense, attorney fees, and expenses of the insured while attending trial.

■ The supplementary payments provisions are stated to be "in addition to the applicable limits of liability." State Farm's agreement to pay court costs and interest is not part of, but is a separate obligation beyond "the limit of the company's liability" of $25,000. Costs and interest after judgment, even though they accompany or follow a judgment, are separate and apart from a judgment.[3] The "applicable limits of liability" pertain to the limits for damages arising out of bodily injury. The judgment is what is awarded the victorious plaintiff for the verdict returned by the jury which assesses the plaintiff's damages. Thus, the limit of the company's liability on the judgment—that is, "the limit of the company's liability thereon"—is fixed by the limit of liability stated in the declarations, which in this case is $25,000.

The foregoing accords with the generally accepted view that in instances where claim is being made that the company is liable for an excess over the coverage because of its negligent or bad faith failure to settle within the policy limits, it is the policy limits as stated in the declarations which determine whether the offer to settle was in fact within the policy limits, a necessary predicate to establishing excess liability on the part of the insurer. See the many cases collected in Annotation: Liability Insurer—Duty to Settle, 40 A.L. R.2d 220–224, all proceeding on the assumption that the policy limits were the

---

2. These provisions for supplementary payments (a) through (d) are commonly found in standard automobile liability policies. Couch on Insurance 2d, Vol. 15, Sec. 56:34, p. 704; Risjord-Austin, Automobile Liability Insurance Cases, Standard Provisions and Appendix, Standard Family Automobile Liability Policy, Supplementary Payments, pp. 56, 183–84, 265 (1964).

The Risjord-Austin work, we observe, is cited by both plaintiff and defendant in their briefs.

3. Sec. 408.040, RSMo 1969, V.A.M.S., provides that "Interest shall be allowed on all money due upon any judgment or order of any court . . ." Interest is " . . . a mere incident, a mere sequence", Schwyhart v. Barrett, 223 Mo. 497, 502, 122 S.W. 1049, 1050 (1909).

Sec. 514.060, RSMo 1969, V.A.M.S., provides that "In all civil actions . . . the party prevailing shall recover his costs against the other party . . ." " . . . [C]osts are not the direct object of a suit but an incidental result of its prosecution . . ." Missouri Appellate Jurisdiction, 1964 Wash. U.L.Q. 425, 633.

round figures stated in the declarations. None of these cases treat the policy limits as including the supplementary obligations of the insurer requiring payment of interest, costs, attorney fees, expenses, bond fees and the like, although, of course, such payments do increase the total outlay required of the insurer, Couch on Insurance 2d, Vol. 15, Sec. 56:36, p. 705.

It strains the meaning of the supplementary provisions to say that they serve to increase the company's liability on the judgment. They do not. Instead they enlarge the company's liability for specified obligations and expenditures over and above the company's $25,000 liability on the judgment obtained by the plaintiff for bodily injury damages. Nor is it correct to say that State Farm agreed to be responsible for all interest accruing on the entire amount of the judgment until State Farm paid or tendered the full amount of its liability under the policy, an amount which in many instances would not be known until all litigation was terminated and expenses paid. For the policy to provide this, it would have to read "until the company has paid or tendered such part of such judgment as does not exceed the limit of the company's liability under the policy." Instead the policy uses the word "thereon", which cannot be considered synonymous with the words "under the policy."

The same problem was before the court in High v. Southern Farm Bureau Casualty Insurance Co., 247 Ark. 373, 376, 445 S. W.2d 507, 509 (1969), where the insurance company, although paying the policy limits, failed to pay $17.10 in costs and the plaintiff contended the insurer thereby continued to be liable for interest on the entire judgment. After quoting the policy provisions about payment of interest, which were the same as those in the present case, the court directed its attention to the meaning and significance of the key word "thereon" in the phrase "such part of such judgment as does not exceed the limit of the Company's liability thereon" appearing in the supplementary provisions. The

court concluded that it referred to the limit of liability under Coverage A, which in our case is $25,000, and denied recovery, saying:

"Merriam-Webster New International Dictionary (2d ed. 1935) defines the term 'thereon' as an adverb meaning 'thereupon; after, or as a result of, some specified thing.' . . . Thus when we consider that the adverb 'thereon' means 'as a result of' and that 'the limit of the Company's liability' is not affected by the judgment but by the Coverages A and B, we can only conclude that 'the limit of the Company's liability thereon' refers to the coverages under A and B and does not affect the coverages otherwise provided in [the supplementary payments provisions] . . . ."

Our construction of this policy provision is supported by cases from other jurisdictions and the opinion of legal authorities in the insurance field. The case of Draper v. Great American Insurance Company, 224 Tenn. 552, 458 S.W.2d 428 (1970) involved an action upon a policy of garage liability insurance with an interest provision almost identical to that involved in this case. A judgment was entered by the circuit court for $85,000 on June 24, 1957. On August 7, 1957, the insurance company paid to the court clerk the limit of its liability under the policy ($10,000), plus interest on the $10,000 to the date of payment, plus $285.-00 in court costs. The court of appeals held that the insurance company was liable for interest on the entire judgment, but held that the August 7 payment of the policy limits into court, terminated the company's liability for interest after that date, even though the payment did not include all interest which was then owing. On petition for writ of certiorari to the Tennessee supreme court, appellant argued, similarly to the contention made in this case, that the company's liability for interest was still running and would continue to run until the insurance company had fulfilled its total obligations under the policy. The supreme court affirmed the court of

appeals decision holding that payment of the policy limits stopped further running of interest. The court's opinion said in part, 458 S.W.2d l.c. 432:

"All computations of interest involve application of three basic and essential factors; (1) principal amount, (2) rate, and (3) time period. Appellee's policy provisions unambiguously established the time period . . .

"We therefore hold by the language of the policy appellee has undertaken to pay all interest accruing upon the total amount of the judgment computed at the rate of six per cent per annum during a period of years beginning on the date of overruling motion for a new trial which in the present case is October 5, 1957, and ending on the date appellee has paid or tendered or deposited in court such part of such judgment as does not exceed the limits of the company's liability thereon, which in the present case is August 7, 1959 . . .

"In reaching this decision we are of the view that the cases of River Valley Cartage Co. v. Hawkeye-Security Ins. Co., 17 Ill.2d 242, 161 N.E.2d 101, supra [1959], and Mayberry v. Home Ins. Co., 264 N.C. 658, 142 S.E.2d 626 [1965], express the sound majority rule relating to construction of the phrase 'all interest accruing' appearing in the policy provisions presented in the case at bar . . . However, we reject the view of these cases insofar as they establish the ending date of the interest period to extend farther than the date when the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon. The policy provisions in the case at bar clearly express and set forth the ending date of the interest period. There being no doubt or uncertainty appearing in the policy relating to the ending date of the interest period, we will enforce the policy provisions according to their plain meaning. Appellant's assignment No. 1 is overruled."

The problem presented in this case was before the court in the case of Hafer v. Schauer, 429 Pa. 289, 293, 239 A.2d 785, 787 (1968), in which the court construed a similar provision for termination of interest liability and held:

"The policy provides that Erie's liability for bodily injury caused to one person by the insured shall be limited to $20,000.00. It further provides that Erie shall pay 'all interest on the entire amount of any judgment therein which accrues after entry of the judgment. . . .' The instant record discloses that judgment was not entered on the verdicts until April 13, 1965, on which date plaintiff commenced execution proceedings. However, long before entry of judgment, Erie had (1) tendered the policy limit, (2) tendered the policy limit plus interest on one-half of the entire amount of the verdict plus one-half of the costs, and (3) paid into court the latter sums. Since Erie has complied with the terms of the policy and before the entry of judgment 'paid or tendered or deposited in court that part of the judgment which [did] not exceed the limit of the Erie's liability,' the court below erred in including in its judgment a requirement that Erie pay interest on the entire amount of the verdicts."

And in the case of Weber v. Biddle, 4 Wash.App. 519, 529, 483 P.2d 155, 161 (1971) the court construed the aforesaid standard interest provision saying, "The intent of the clause is that the insurer will pay interest on the entire amount of the judgment until policy limits are paid or tendered or deposited in court. Rocky Mountain did not pay, tender or deposit the amount of policy limits into court. It is liable for interest on the full amount of the judgment."

Plaintiff relies on two cases from other jurisdictions which held that an insurance

company must pay or tender its entire obligation under the insurance policy to protect itself from further liability, The Home Indemnity Co. v. Muncy, 449 S.W.2d 312 (Tex.1970) and River Valley Cartage Co. v. Hawkeye-Security Ins. Co., 17 Ill.2d 242, 161 N.E.2d 101 (1959). The holdings in these cases have been criticized. Risjord and Austin in their publication Automobile Liability Insurance Cases, supra, made this comment about the *Home Indemnity* holding, Vol. 6 at 7273: ". . . While we agree that the insurer owes all of the interest on the entire judgment (here $225,000) until it pays or tenders or deposits 'that part of the judgment which does not exceed the limit of the company's liability thereon' (here $5000) we fail to see that the deposit or tender must include the interest to date in order to stop further interest on the unpaid $225,000." These writers made a similar criticism of the *River Valley Company* case, Vol. 2 at 1786: ". . . The holding by the Supreme Court that the tender must include the interest as well as the judgment seems to do violence to the policy wording." It is interesting to note that the court of appeals in the *River Valley Company* case, 18 Ill.App.2d 454, 461, 152 N.E.2d 603, 1.c. 607 reached an opposite result from the Illinois Supreme Court, saying:

"We must now decide whether a proper tender was made. The record is clear that on July 3, 1956, appellant tendered to plaintiff in open court the sum of $50,000, the policy limit. Plaintiff concludes that this was not a proper tender in that it did not include interest on the judgment to that date. We believe that the language of section (c) 'until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the company's liability thereon' is free from ambiguity and is distinct from the ambiguous portion of the same provision. It means that the accrual of interest shall terminate upon a tender of the principal amount for which the company is liable exclusive of all costs and interest. Interest and costs

are a separate and distinct obligation which the insurer assumes to pay over and above the policy limitation."

We similarly do not read the wording of the policy provision in question as requiring more than tender or payment of the policy limits, in this case $25,000.

■ Plaintiff cites various Missouri cases on the general proposition that in order to stop the further accrual of interest, tender must be of the full amount due. An insurance company's liability is determined by the terms of its policy, Bartelman v. Humphrey and M.F.A. Insurance Co., 441 S.W.2d 335, 341 (Mo.1969) and in an action on the policy the court cannot award any interest except in compliance with the policy terms. See Gamel v. Continental Insurance Company, 463 S.W.2d 590 (Mo. App.1971). None of the cases cited by plaintiff deal with or pertain to construction of an insurance contract interest provision and therefore are not in point.

■ This brings us to a subsidiary point raised by plaintiff, that is, whether State Farm's method of proceeding here was a sufficient payment or tender even if the obligation to pay interest ends once the company pays the limit of its coverage. Plaintiff points out that the standard policy provision provides for termination of liability for future interest when "the insurer has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the insurer's liability thereon", Risjord-Austin, supra, Standard Provisions, p. 56, but that the policy in question does not include the provision for payment into court. However, the "or deposited in court" language is redundant, since deposit in court is one of the many ways money could be "paid or tendered", and we do not consider its absence from the present policy as prohibiting the procedure followed by the insurer in the present case. Plaintiff was a minor. The prudent course for all concerned was for defendant to pay the $25,000 into court and let plain-

tiff obtain it from there. Plaintiff could not have given the insurer a binding release, see Nelson v. Browning, 391 S.W.2d 873 (Mo.1965). And a minor's parents as natural guardians or as a court appointed next friend have no power to execute a release binding on the minor, see Kirk v. Middlebrook, 201 Mo. 245, 100 S.W. 450 (1907); Campbell v. Campbell, 350 Mo. 169, 165 S.W.2d 851 (1952); Notes—Problems Arising from a Minor's Tort Claim, 1957 Wash.U.L.Q. 253. Plaintiff's next friend could not execute a binding release unless he was bonded under and followed the procedure prescribed in Secs. 507.110–507.220, RSMo 1969, V.A.M.S., none of which occurred here. The payment of the $25,000 to the clerk was proper under the circumstances.

■ The insurer made it plain that in paying the $25,000 into court it was thereby terminating, in its view at least, any further liability for interest. Counsel for plaintiff did not contend otherwise at the time, nor did plaintiff make any protest about failure to include costs and interest to date in the tender. Rather, plaintiff sought to obtain the $25,000 from the clerk. The clerk did not release the money, although willing to do so upon receiving an order from the court. The record discloses no motion by plaintiff at any time requesting the court to order the $25,000 paid over to her. On these facts we do not believe plaintiff can be heard to complain about the method of payment of the $25,000.

Because of the foregoing, the judgment of the trial court is reversed and the cause remanded with directions to enter judgment against defendant in such amount as equals the interest which accrued on the entire judgment during the 67-day period between rendition of the judgment and the date of the payment of the $25,000 to the clerk plus interest on the amount so computed from April 15, 1969 to the date judgment is entered pursuant to this order.

All of the Judges concur.