**Frances J. BARKLAGE, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**No. 84–1028–CV–W–1.**

United States District Court, W.D. Missouri, W.D.

Jan. 17, 1985.

defendant is entitled to summary judgment as a matter of law.

Charles W. Hess, Sr., Kansas City, Mo., for plaintiff.

Niles S. Corson, of Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

JOHN W. OLIVER, Senior District Judge.

### I.

This diversity case, removed from the Circuit Court of Jackson County, Missouri, was originally filed in two counts. Count II, which sought punitive damages in addition to the penalties provided in Missouri Revised Statute Section 375.420, was dismissed by Order of this Court on July 5, 1984.

Count I, which now pends on cross motions for summary judgment, alleges that defendant is liable for the payment of certain disability benefits provided under a group long term disability policy which covers plaintiff as an employee of the defendant. We have considered all of the numerous briefs, affidavits, responses and replies that have been filed by the parties in support and in opposition to the pending cross motions for summary judgment. By letters to the Court, both plaintiff and defendant stated their agreement that the case is now in a posture for ruling.

We find and conclude that there is no genuine issue of material fact and that

### II. Facts

It is undisputed that plaintiff was covered by the group insurance policy, 50–LTD–1, which provided for an employees' benefit plan offered by defendant to its employees and participated in by plaintiff. (Stip.Doc. # 1). A copy of a summary of the policy upon which plaintiff relies is one of the documents before the Court under the stipulation of the parties. (Stip.Doc. # 6).

The parties agree that plaintiff was determined to be disabled on March 9, 1981. Pursuant to defendant's insurance program she received temporary disability benefits for approximately six months at which time it was agreed that she became eligible for long term disability benefits. There is no dispute that defendant complied with the terms of the contract in regard to the payment of the temporary disability payments. (Depo. of Pl., p. 110).

It is further agreed that on September 12, 1981 plaintiff became eligible for the payment of long term disability benefits through the group insurance policy offered by defendant, 50–LTD–1. The dispute between the parties relates to the monthly amount of the long term disability benefits to which plaintiff is entitled.

The amount of the monthly benefit is contingent upon the employee's monthly compensation at the time of the on-set of disability, and upon the length of employment with the company. The parties agree that plaintiff had worked for defendant for over ten years before the on-set of her disability. It is also agreed that her monthly compensation for purposes of figuring the benefit due was $1,633.67 ($377.00 per week). Seventy percent is thus $1,143.57 and fifty percent is $816.84.

Section 6(B) of the policy sets forth the "Schedule of Insurance and Initial Premium Rates" in the following form:

| Class<br>Years of Continuous<br>Service at Date of<br>Disability | Long Term Disability<br>Income Insurance<br>(Monthly Benefit)* | Initial Monthly<br>Rate per<br>$1,000 of Covered<br>Payroll<br>(United States and<br>Canada) |
|---|---|---|
| A. Employees employed<br>in New York State: | No Insurance | |
| B. All other Employees<br>employed in the<br>United States: | | $2.07 |

The amount of Monthly Benefit shall be an amount equal to the applicable percentage specified below of the Employee's Monthly Compensation*, as determined by the Employer, subject to a minimum Monthly Benefit of $50.00

| | During First Six Months<br>For Which Monthly<br>Benefits are Payable | Seventh and Subsequent<br>Months For Which Monthly<br>Benefits are payable |
|---|---|---|
| Less than 5 years | 50% | 50% |
| 5 years but less than<br>10 years | 60% | 50% |
| 10 years or more | 70% | 50% |

Section 7(1) of the policy, the "coordination of benefits" provision, states as follows:

(B) The Monthly Benefits otherwise provided for any period of disability shall be reduced by the aggregate of the following amounts paid or payable for the same period of disability or any part thereof ...

(c) the amount of any weekly or monthly benefits paid or payable or which would be payable to the Employee for the time lost from work under any worker's compensation, Employer's Liability Insurance or occupational disease law, or from any fund, insurance, or other arrangement, provided or established in conformity with any state or other governmental disability or cash sickness benefit law.

(d) the amount of the United States Social Security Benefits ... to which the Employee is (or upon making timely and proper request and submitting due proof, would be) eligible ....

(e) with respect to an Employee in the United States who has received benefits hereunder for six months, the amount of the United States Social Security Disability Benefits to which all dependents of the Employee are (or upon making timely and proper request and submitting due proof, would be) eligible by reason of the Employee's disability or the amount of any Old Age Social Security Benefits to which all dependents of the Employee are or would become eligible after the Employee's attainment of age 62, but only to the extent that the monthly rate of the aggregate of such Benefits exceed 20% of the Employee's basic monthly compensation, as determined by the Employer. (Doc. # 1, pp. 6-7).

The relevant provisions of the "Summary of Your Insurance and Retirement Program and Other Employee Benefit Plans" provided to the employees was set forth in the following form:

4. Benefits are payable as follows, with a minimum LTD benefit of $50 a month:

| If you have the following years of service at the date of your disability | You are paid the following percentage of your monthly salary as of the date of your disability | |
| --- | --- | --- |
| | First 6 months | After 6 months |
| Less than 5 | 50% | 50% |
| 5 but less than 10 | 60% | 50% |
| 10 and over | 70% | 50% |

These benefits are reduced by the amount of disability benefits for which you are eligible because of any motor vehicle no-fault insurance law, or under any workmen's compensation law, occupational disease law, state or government cash sickness compensation law or any fund, insurance or other arrangement established in conformity with such law and also by any Social Security disability and old age benefits for which you are eligible.

5. After you have received LTD benefits for six months, the total of your benefits from LTD, Social Security (including family benefits), workmen's compensation and no-fault insurance may not be more than 70 percent of your monthly salary at the time you were disabled. If your total benefits are greater, your LTD benefit will be reduced to bring your combined benefits to 70 percent of the monthly salary you were receiving when you became disabled. However, the minimum LTD benefit will still be $50 a month.

(Doc. # 6, p. 13).

On August 5, 1981 plaintiff signed a document entitled a "Reimbursement Agreement Regarding Monthly Advances For Which Social Security Benefits May Be Payable." Her application for benefits was then pending before the Social Security Administration.

The reimbursement agreement stated in part:

"I understand that Long Term Disability benefits under the Metropolitan Insurance and Retirement Program are reduced by primary Old Age or Disability benefits which I may be eligible to receive under the Federal Social Security Act ...

Pending determination of my claim under Social Security, I request that Metropolitan Life Insurance Company advance to me amounts which would be otherwise payable as Metropolitan Long Term Disability benefits if I were not eligible for Social Security Old Age or Disability benefits ...

In consideration of any such advances, I agree to reimburse Metropolitan the amount of any such advances immediately upon receipt of my retroactive Social Security benefits. Furthermore, I agree that in the event of my failure to reimburse Metropolitan in full, Metropolitan may recover the amount of the unreimbursed advances by withholding or reducing the amount of such advances from future benefit amounts which may become payable under any Metropolitan coverage for which I am insured." (Stip. Doc. # 7 and # 9).

Defendant's policy is to extend the benefit payment arrangement for only three months of Long Term Disability. (Stip. Doc. # 8). Plaintiff's application for Social Security Disability Benefits was not processed within the three-month period. Plaintiff wrote to defendant on November 9, 1981 to ask that her advancements be continued for another three months. She wrote,

I am begging that you consider [sic] the long term disability benefits without reduction of the Social Security Benefits. I signed the form where I would return the advance to you as soon as I receive it from Social Security.

(Stip.Doc. # 10).

On December 3, 1981 plaintiff signed an identical reimbursement agreement to that quoted above. It is agreed that defendant continued the advances to plaintiff.

In February 1982, plaintiff's Social Security claim was approved for disability benefits of $466.70 per month, commencing retroactively on September 12, 1981. In April 1982, defendant began reducing plaintiff's monthly award by $466.70 per month. (Stip.Doc. # 2).

Defendant had advanced plaintiff $2,800.20 ($466.70 per month for six months) which was awarded to plaintiff retroactively by the Social Security Administration. (Depo. of Pl., p. 41–2). Defendant began to attempt to be reimbursed this sum. Defendant notified plaintiff to return the advances as agreed. (Stip.Doc. # 11, 12, and 19). Plaintiff refused; so, beginning in July 1982, the balance of the benefit payments after all reductions has been applied by defendant to recouping the $2,800.20.

On April 1, 1982 plaintiff settled three worker's compensation injury claims for a total of $21,000.00. A transcript of the deposition and settlement conference has been stipulated as genuine. (Stip.Doc. # 3). Administrative Law Judge James Crisp entered an "Order Approving Compromise Settlement." (Stip.Doc. # 5).

The order set out the dollar amount of the settlement for each injury and then stated,

Further, it is ordered that the full sum of twenty-one thousand dollars ($21,000.00) be paid to claimant and her attorneys and that such sum shall not be reduced by virtue of any amounts previously paid to claimant under any long term disability program of employer-insurer.

(p. 1–2).

Defendant paid plaintiff in a lump sum as agreed and plaintiff signed receipts for the compensations. (Stip.Doc. # 4). Twenty-five percent (25%) of the award was given to plaintiff's attorney, Kenneth Dake, as his fee. On July 1, 1982 defendant began reducing the amount of plaintiff's benefits by $292.50 per month. This amount is the $21,000.00 award reduced by the attorney fee and divided by 233.33 weeks.. Defendant will have recouped the $15,750.00 settlement by December 31, 1986. Defendant does not intend to insist that plaintiff repay the amount of the settlement attributable to the attorney fee.

The transcript of the conference documents that the attorney for defendant questioned plaintiff extensively on the terms of the settlement involving waiver of rights saying:

Q: And you understand that any claim that Metropolitan or Travelers may have or may not have to reduce these Workers' Compensation settlements and payments by virtue of that $14,000.00 disability payment, is being waived by Metropolitan and Travelers here today in the event that the settlement is approved?

A: Yes. . . .

Q: And you understand then, that one of the benefits accruing to you by this settlement, if it's approved, is that you and your attorney will receive the full $21,000.00 in cash without any reduction for past long-term disability payments that you may have received from Metropolitan?

A: Yes. . . .

A: And you understand, Ms. Barklage, that it's the position of Metropolitan Insurance Company that any future long-term disability payments they may make to you under their long-term disability program may be reduced substantially because of the money you are seeking to recover under this Workers' Compensation settlement?

A: Yes.

(Stip.Doc. # 3, p. 13–15). At the end of the deposition the attorney for defendant made a lengthy record and expressly stated in plaintiff's presence that no waiver in regard to the future benefits had been made, including:

I am not authorized to and have not waived any right that Metropolitan may have and which it claims, in fact, it does have, to reduce future long-term disability payments to this Claimant under the Metropolitan long-term disability program for its employees by virtue of the settlement she will receive here if it's approved.

(Stip.Doc. # 3, p. 23).

Further facts will be stated below in this memorandum as necessary to clarify the contentions of the parties and the Court's discussion of the applicable law.

### III. Contentions of the Parties

#### A.

Plaintiff contends that defendant has not been paying her the monthly benefit she is due under the policy.

Plaintiff's petition as filed in the state court prayed that plaintiff be awarded damages in the amount of $282,126.00. Plaintiff has never attempted to articulate a theory upon which she should recover damages in that amount.

Plaintiff, however, maintains in various filings made subsequent to the filing of her petition that she is entitled to be paid each month 70% of her former monthly compensation, or $1,143.57, until she reaches the age of 60.

Plaintiff contends that paragraph five of the summary, rather than the chart in paragraph four or in the contract, controls in "combined benefits situations." She proposes that the chart governs the normal case, but that paragraph five of the summary of the policy controls where benefits from other sources are involved. Plaintiff maintains that paragraph five, establishes a "floor under which monthly reductions can not go." (Barklage Affidavit, ¶ 6; Pl.'s Supp. Reply filed 10/31/84). Plaintiff states that "this clause establishes $1,143.57 as the monthly benefit of plaintiff until she reaches 60 years of age." (Pl.'s Counter-affidavit to Raneri, ¶ 4; Pl.'s Reply 11/26/84). Plaintiff cites no legal authority which would construe the policy in this manner.

Plaintiff further contends that defendant is not entitled to reduce the amount of the worker's compensation settlement under any circumstances. Plaintiff proposes that the "coordination of benefits" provision does not apply to her particular worker's compensation settlement because plaintiff's situation is not an ordinary one in that the worker's compensation payment was made in one lump sum settlement and an order

approving the settlement was entered by an ALJ.

Plaintiff further contends that the provision applies only to "non-settlement" situations. She maintains that where a lump sum cash payment is involved, rather than periodic payments, the provision does not control. (Pl.'s Reply filed 11/26/84). Again, plaintiff cites no legal authority in support of this construction.

Plaintiff maintains that reduction of any of the $21,000.00 award is in violation of the order entered by Administrative Law Judge Crisp. (Pl.'s Supp. Reply filed 10/31/84, p. 4). Plaintiff argues that "Judge Crisp's Order ... provides that Metropolitan could not reduce [the $21,000] sum ... such an action would disregard the Court's Order." (Barklage Affidavit p. 2, ¶ 4).

Plaintiff also contends that the coordination of benefits provision is not applicable because any rights under it were waived. (Pl.'s Counter-affidavit to Raneri, ¶ 5). Plaintiff argues that defendant waived any rights it might have to reduce the benefits by the settlement sum in the conference leading to the settlement agreement.

Plaintiff's final contention is that paragraphs four and five of the summary at least establish a minimum monthly payment of $50. Plaintiff states that she has not even received that amount since April 1982. (Petition, ¶ 5; Barklage Affidavit ¶ 7).

#### B.

Defendant contends that it is and has been in compliance with the terms of the contract of insurance and the order approving the compromise settlement of the worker's compensation claims. Defendant's explanation in its answer of the reductions made has remained consistent throughout the case.

Defendant contends that the benefits chart set forth in the policy and the summary establishes that after the first six months the long term benefits due are 50% of the monthly compensation, or $816.84 per month for plaintiff. It is from this amount that reductions are made.

Defendant maintains that it is permitted pursuant to the coordination of benefits provision to reduce plaintiff's monthly benefits by the amount plaintiff receives from Social Security. Accordingly, after notice that plaintiff's disability benefits were $466.70 per month, defendant began reducing plaintiff's payment by that amount in April 1982. (Answer, ¶ 12).

Defendant further contends that the same provision allows it to reduce plaintiff's benefits by the $15,750.00 plaintiff herself received from settlement of her worker's compensation claims. It was agreed that plaintiff would settle for a rating of 58.33% disability. (Doc. 3, p. 12). The maximum compensation period for a permanent partial disability under the worker's compensation schedule of losses is 400 weeks. R.S.Mo. § 287.190(3). 58.33% of 400 weeks is 233.33 weeks. Defendant divided the award plaintiff received in settlement by 233.33 and began reducing plaintiff's monthly benefit by $292.50 per month in July 1982. (Answer, ¶ 11).

Defendant contends that all it waived at the conference was the right to offset the $21,000.00 by the $14,000.00 in benefits defendant had already paid to plaintiff. Defendant maintains that it agreed to give plaintiff a lump sum award of the whole amount, rather than to recoup any overpayments before paying out the balance. Defendant contends that pursuant to Judge Crisp's order the full sum was paid unreduced by virtue of any amounts previously paid to plaintiff and that it is only the future payments which have been reduced.

Defendant acknowledges that the policy establishes a $50 minimum payment despite reductions for Social Security and worker's compensation. Defendant contends that it is crediting $57.64 per month to plaintiff's account in compliance with the minimum due.

Defendant further contends, however, that it may reduce plaintiff's monthly benefits to recoup the advances defendant made to plaintiff which duplicated those Social Security benefits awarded retroactively to plaintiff. This reduction, defendant maintains, was provided for in the Reimburse-ment Agreement signed by plaintiff. Defendant contends that plaintiff explicitly agreed that in the event of her failure to reimburse the advances, defendant could reduce the amount of the advances from future benefit amounts payable by defendant. (Answer, ¶ 14). Accordingly, defendant has been crediting the remainder of plaintiff's monthly benefit to the reduction of the advances since July 1982. Defendant explains that plaintiff, therefore, receives no monthly check from defendant and it is planned that she will not until the balance of $2,800.20 is recouped.

## IV. Discussion of Applicable Law

Defendant's liability is determined by the terms of the contract of insurance as contained in the policy. *Levin v. State Farm Mutual Auto. Ins. Co.*, 510 S.W.2d 455, 461 (Mo. banc 1974); *Frisella v. Reserve Life Ins. Co. of Dallas*, 583 S.W.2d 728, 733 (Mo.App.1979). An insurance policy is simply a contract, involving matters of basic contract law. *Moss v. National Life & Acc. Insur. Co.*, 385 F.Supp. 1291, 1295 (W.D.Mo.1974); *Stahlberg v. Travelers Indem. Co.*, 568 S.W.2d 79, 85 (Mo.App.1978).

The rule in contract interpretation is to ascertain the intent of the parties and to give effect to that intent. Where there is no ambiguity in the contract the intent of the parties is to be gathered from the contract alone. The clear meaning of the contract is a matter of law for the Court's decision, not a question of fact. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). Ambiguity does not arise from a contract merely because the parties disagree as to how the contract should be construed. *J.E. Hathman, supra*, 491 S.W.2d at 264; *Buder v. Martin*, 657 S.W.2d 667, 669 (Mo. App.1983).

We find that the provisions of the policy in question are clear and unambiguous. The language has been stipulated to by the parties in each instance. We will proceed to construe these provisions as a matter of law in accordance with the clear meaning of the policy language.

We find that the chart in the policy and the summary clearly set out that plaintiff's monthly benefit after six months is to be 50% of her former monthly salary. Under this section plaintiff is entitled to $816.84 per month. The amount to be paid, however, is subject to reductions in accordance with other provisions in the policy.

We disagree with plaintiff's interpretation of paragraph 5 of the summary which plaintiff calls the "combined benefits" provision. We find that this paragraph is unambiguous and clearly limits defendant's potential liability by establishing a ceiling on the payment amount in conjunction with other benefits an insured might receive.

We find and conclude that defendant contracted to pay a minimum of $50 per month and a maximum after six months of 50% of the insured's previous income. Paragraph 5 explains the "coordination of benefits" provision which allows defendant to adjust the amount within these bounds based in part upon the total the insured receives from the sources listed. Pursuant to section 7(1)(B)(e) of the policy, Social Security benefits to dependents of the employee are reduced from the monthly benefit *only* to the extent that they exceed 20% of the basic monthly compensation. The family benefits, if any, may raise the monthly award by that 20% from 50% to 70%. Anything over the 70% ceiling may be reduced as is explained in paragraph 5 of the summary. However, since plaintiff has no dependents receiving benefits, that provision has no effect on her monthly benefit. Plaintiff is entitled to a total of $816.84 per month from the listed sources.

We find that the language of the "coordination of benefits" provision in the contract is unambiguous and that the parties specifically contracted to allow defendant to reduce the monthly payments due to plaintiff by any Social Security or worker's compensation award. Similar "coordination of benefits" clauses have been upheld by other courts. *Dowell v. Aetna Life Ins. Co.*, 468 F.2d 802, 804 (4th Cir.1972), *cert. denied,* 410 U.S. 931, 93 S.Ct. 1374, 35 L.Ed.2d 594 (1973); *Lamb v. Connecticut Gen. Life Ins. Co.*, 643 F.2d 108, 110 (3rd Cir.1981); *Weiss v. CNA*, 468 F.Supp. 1291, 1294 (D.C.Pa.1979); *Henning v. Metropolitan Life Ins. Co.*, 546 F.Supp. 442, 449 (D.C.Pa.1982). The fact that plaintiff received the award in a lump sum does not bar reduction of the worker's compensation award. *Christian v. Metropolitan Life Ins. Co.*, 566 P.2d 445, 447 (Okla.1977); *Capps v. Amer. Mut. Liability,* 601 S.W.2d 816, 818 (Tex.Civ.App.1980).

We find and conclude that defendant is clearly entitled to reduce the monthly benefit by the amount of plaintiff's Social Security disability payment, $466.70 per month, pursuant to the contract provisions. Defendant may continue such reductions so long as plaintiff is receiving Social Security disability payments.

The policy clearly provides for reduction of amounts to which the employee "upon making timely and proper request and submitting due proof would be" eligible. (Doc. # 1, p. 7). The retroactive award of benefits proves that plaintiff was eligible at the time for such benefits. Plaintiff contracted for one award, not two. Defendant was entitled to reduce this amount all along. However, defendant advanced plaintiff $2,800.20 while the Social Security claim was pending.

We find and conclude that defendant is entitled to be reimbursed this amount. We find that pursuant to the Reimbursement Agreements signed by plaintiff, since plaintiff has not reimbursed the advances, defendant is entitled to reduce the amount of the advances from the monthly benefit payments plaintiff is due.

We further find that the transcript of the worker's compensation settlement conference clearly documents that defendant did not waive any right it might have to reduce plaintiff's *future* benefits. We find that the settlement payments were made in accordance with Judge Crisp's order. Based upon the stipulated documents and the depositions, we find and conclude that plaintiff's settlement was not reduced at

all. Her benefits paid after the settlement have been reduced. We find that these reductions are allowable as a matter of law by the terms of the policy and the Order Approving Compromise Settlement.

## V. Conclusion and Orders

We find that by the explicit terms of the policy, defendant is to be paying plaintiff 50% of her former monthly compensation, or $816.84, each month until retirement. We further find that defendant is entitled to reduce these payments each month by $466.70 so long as Plaintiff's Social Security disability benefits continue at that rate or at a higher rate, and by $292.50 per month until the $15,750 worker's compensation award is recouped. This means that at present defendant should be paying plaintiff $57.64 per month, which is over the minimum $50 per month as contracted.

We find that defendant has been crediting this amount to plaintiff's account each month. From this amount defendant is applying $10.85 each month as a premium for a policy of survivor benefit insurance for which plaintiff has opted. Defendant is applying $5.40 each month to a premium for health insurance coverage under the Insurance and Retirement Program. These payments, explained in stipulated document # 28, amounting to $16.25 per month are not disputed. Defendant has been applying the remaining $41.30 each month as a credit toward reducing the $2,800.20 Social Security advancement.[1] We find as a matter of law that by the clear and unambiguous terms of the policy, defendant may continue to credit these benefit payments until the advancement is recouped.

We find and conclude that as a matter of law defendant has not breached its contract with plaintiff. We find and conclude that there is no genuine issue of material fact and that defendant is entitled to summary judgment as a matter of law.

Accordingly, it is

ORDERED (1) that defendant's motion for summary judgment in regard to Count I should be and is hereby granted. It is further

ORDERED (2) that plaintiff's motion for summary judgment in regard to Count I should be and is hereby denied. It is further

ORDERED (3) that the Clerk of this Court will enter judgment for the defendant on both Count I and Count II of plaintiff's complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court having granted defendant's motion to dismiss Count II on July 5, 1984.

---

1. From a balance sheet point of view, plaintiff's account is as follows:

| | | | |
|---|---|---|---|
| GROSS MONTHLY LTD BENEFIT | $816.84 | | |
| SOCIAL SECURITY PAYMENT | | $466.70 | |
| WORKER'S COMP. PAYMENT | | 292.50 | |
| SURVIVOR BENEFIT PREMIUM | | | 10.85 |
| HEALTH INSURANCE PREMIUM | | | 5.40 |
| SOC. SEC. ADVANCE REDUCTION | | | 41.39 |
| | $816.84 | | $816.84 |