IV of defendant's second amended counter-claim.

Mark ADOLPHUS, et al., Plaintiffs,

v.

NATIONAL SUPER MARKETS,
et al., Defendants.

No. 89–1417–C–5.

United States District Court,
E.D. Missouri, E.D.

Oct. 17, 1991.

Thomas Berndsen, Charles Dufour, Becker, Dufour & Yarbrough, St. Louis, Mo., for plaintiffs.

Jay Levitch, The Stolar Partnership, St. Louis, Mo., for defendants Kroger and Topvalco.

Ann E. Hamilton, St. Louis, Mo., for defendants Nat. and Nat. Tea.

## MEMORANDUM

LIMBAUGH, District Judge.

Plaintiffs are general partners of South County Venture, L.P., a limited partnership that owns a parcel of real estate improved with a building commonly used as a super market. In 1979 the building was leased to defendant National Super Markets, Inc. After National assigned the lease to defendant Topvalco, Inc., plaintiffs filed a five count second amended complaint against defendants alleging, *inter alia*, that plaintiffs are entitled to a rent increase due to the assignment of the lease. This cause is before the Court on two motions for sum-

mary judgment: defendants National and National Tea filed a joint-motion for summary judgment; defendants Kroger and Topvalco filed a joint-motion for summary judgment.

### Standard for Summary Judgment

Courts have repeatedly recognized that summary judgment is a harsh remedy which should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null,* 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Electric Cooperative Inc.,* 838 F.2d 268, 273 (8th Cir.1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt. Pleasant, supra,* 838 F.2d at 273. Once the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the non-moving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that can logically be drawn from those facts. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the non-moving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.

Chippewa Watson Corp. owned a building located at 7057 Chippewa Street (the "Premises"). On June 19, 1979 Chippewa Watson Corp. leased the Premises to defendant National Super Markets, Inc. ("National") pursuant to the terms of a twenty year renewable lease (the "Prime Lease"). Defendant National Tea Co. ("National Tea") unconditionally guaranteed National's performance under the Prime Lease. (Hereinafter the Court refers to National and National Tea jointly as National.) On February 2, 1981 the parties amended the Prime Lease (the "Amended Prime Lease"). The Amended Prime Lease increased the minimum annual rent to $210,000. With regard to subleases or assignments the Amended Prime Lease provided, in Paragraph 8:

> Lessee may assign or sublet the whole of any part of the within demised premises for any lawful retail purpose at any time during the term of this Lease or extension thereof. . . .

In the event of an assignment or sublease, Paragraph 8 provided the following formula by which the lessors may be entitled to a rent increase:

> [I]n no event shall the annual total rent be less than the greater of (a) the average total rent paid by Lessee to Lessor for the three (3) years immediately proceding [sic] such assignment or subletting, or (b) an amount equal to (a) plus one-half of the amount by which the annual total rent (after deducting any third party leasing commissions) received by Lessee from such sublessee or assignee exceeds (a).

On December 1, 1981 National subleased the Premises to The Kroger Co. ("Kroger") for $308,000.00 per year. On December 8, 1981 Chippewa Watson Corp. agreed to Na-

tional's sublease to Kroger with a Letter Amendment to the Amended Prime Lease. The Letter Amendment stated, in relevant part:

> This letter is written to acknowledge your subletting and to advise you that we are agreeable to same with the understanding that the minimum annual net rental to be paid to Chippewa Watson Corporation during the term shall be $259,000.00.[1]

> [D]uring the first year of the term of the sublease with Kroger, Chippewa Watson's minimum annual net rent shall be $246,500. During the remainder of Kroger's sublease Chippewa Watson's minimum annual net rental shall be $259,000.00.

On August 31, 1985 Chippewa Watson Corp. transfers the ownership of the Premises to plaintiffs.

Kroger sought to assign its sublease to Schnucks–Twenty–Five, Inc. ("Schnucks"). On November 25, 1986 plaintiffs and Schnucks entered into a Letter Agreement concerning the assignment of Kroger's sublease to Schnucks. The Letter Agreement provided, in relevant part:

[Plaintiffs], Lessor under the above-described Prime Lease, with respect to the assignment by Kroger to Schnucks of Kroger's interest as Sublessee under the above-described Sublease, does hereby waive its right to notice of such assignment under provisions of Article 8 of the Prime Lease and to obtain an alternative Tenant in regard thereto. [Plaintiffs] agree[ ] that there shall not be any increase in rent under the Prime Lease as a result of such assignment. This waiver is made with respect to the proposed assignment from Kroger to Schnucks and is not a waiver of [plaintiffs'] position to require such notice with respect to any future assignment or sublease.

On January 1, 1987 Kroger assigned its sublease to Schnucks for $308,000 per year.

On December 10, 1986 National assigned the Amended Prime Lease to Topvalco, Inc. ("Topvalco"), which is a wholly owned subsidiary of Kroger.[2] On November 28, 1986 National informed plaintiffs that it intended to assign the Amended Prime Lease to Kroger. Plaintiffs later discovered that the Amended Prime Lease was instead assigned to Topvalco, Kroger's real estate holding company. The assignment became effective March 4, 1987.

Before Assignment

After Assignment

---

1. The rent increase to which Chippewa Watson Corp. was entitled after the sublease was calculated using the formula in Paragraph 8 of the Amended Prime Lease:

$210,000 + ½ ($308,000 − 210,000) = $259,000.00.

2. National remained liable to plaintiffs after the assignment of the Amended Prime Lease.

Before the assignment, National paid rent of $259,000.00 per year to plaintiffs. After the assignment, Topvalco pays rent of $259,000.00 per year to plaintiffs. Before the assignment, Schnucks paid rent of $308,000.00 to National. After the assignment, Schnucks pays rent of $308,000.00 to Topvalco. Plaintiffs speculate that the assignment of the Amended Prime Lease from National to Topvalco resulted in a discharge or satisfaction of some other unrelated business transactions or debts between Kroger and National. Plaintiffs, however, have not produced any evidence of such dealings to support their allegation.

### Count I—Breach of Contract

At first glance the resolution of the outstanding motions appeared complex, but after hearing oral argument on plaintiffs' cause of action for breach of contract, the Court concluded that this entire action was appropriate for summary consideration. The issue before the Court is whether the assignment of the Amended Prime Lease from National to Topvalco triggered an increase in rent payable to plaintiffs under Paragraph 8 of the Amended Prime Lease. Plaintiffs assert that they are entitled to $25,000.00 per year in additional rent due to the assignment. Defendants assert that the assignment did not entitle plaintiffs to additional rent.

■ First, defendants assert that the assignment of the Amended Prime Lease from National to Topvalco did not result in a rent increase because the Letter Amendment dated December 8, 1981 froze the annual rent paid to plaintiffs at $259,000.00 and specifically precluded further rent increases. The Letter Amendment dated December 8, 1981 provided, in relevant part:

> This letter is written to acknowledge [National's] subletting to [Kroger] and to advise you that [Chippewa Watson Corporation is] agreeable to same with the understanding that the *minimum annual net rental* to be paid to Chippewa Watson Corporation during the term shall be $259,000.00.

This means during the first year of the term of the sublease with Kroger, Chippewa Watson's *minimum annual net rent* shall be $246,500. During the remainder of Kroger's sublease Chippewa Watson's *minimum annual net rental* shall be $259,000.00. (Emphasis added.)

Defendants argue that by designating the sum of $259,000.00 per year as the "minimum annual net rental", Chippewa Watson intended to cap its annual net rental at $259,000.00 for the duration of Kroger's sublease. Minimum means "the least quantity assignable, admissible, or possible." *Webster's Ninth New Collegiate Dictionary* 756 (1985). The use of the term "minimum" demonstrates that $259,000.00 is the least that Chippewa Watson Corp. would receive as annual net rent for the premises. Defendants' argument that $259,000.00 per year is the maximum that Chippewa Watson Corp. would receive contravenes the clear, unambiguous language of the Letter Amendment.

■ Second, defendants argue that plaintiffs waived the right to a rent increase in the Letter Agreement dated November 25, 1986. The Letter Agreement provided, in relevant part:

> *[Plaintiffs] waive[ ], as to the proposed assignment to Schnucks only, its rights, if any, (i) to notice of the assignment to Schnucks and to obtain an alternative assignee, and (ii) agrees that there will be no change in the rental as a result of such assignment.*
>
> \* \* \* \* \* \*
>
> *[Plaintiffs] agree[ ] that there shall not be any increase in rent under the Prime Lease as a result of such assignment.*

In the Letter Agreement plaintiffs agreed not to seek a rent increase following the assignment of the sublease from Kroger to Schnucks. Plaintiffs' agreement not to seek a rent increase following such assignment was not effective as to subse-

quent assignments, such as National's assignment of the Amended Prime Lease to Topvalco. Therefore, neither the Letter Amendment dated December 8, 1981 nor the Letter Agreement dated November 25, 1986 precludes plaintiff from seeking a rent increase under Paragraph 8 of the Amended Prime Lease.

■ The Court must look to Paragraph 8 of the Amended Prime Lease to determine whether the assignment from National to Topvalco triggered a rent increase for plaintiffs. Plaintiffs argue that under Paragraph 8 an assignment or a sublease will *always* trigger a rent increase for plaintiffs. The Court disagrees. There is no provision in Paragraph 8 that provides for automatic rent increases following every assignment or sublease. Instead, the determination of whether plaintiffs are due a rent increase depends on an application of the formula in Paragraph 8:

> [I]n no event shall the annual total rent be less than the greater of (a) the average total rent paid by Lessee to Lessor for the three (3) years immediately proceding [sic] such assignment or subletting, or (b) an amount equal to (a) plus one-half of the amount by which the annual total rent (after deducting any third party leasing commissions) received by Lessee from such sublessee or assignee exceeds (a).

Paragraph 8 potentially affords plaintiffs a rent increase after two transactions: (1) a sublease of the Premises or (2) an assignment of the Amended Prime Lease or sublease. If the transaction at issue is a sublease, Paragraph 8 is properly read as follows:

> [I]n no event shall the annual total rent be less than the greater of (a) the average total rent paid by Lessee to Lessor for the three (3) years immediately proceding [sic] such ... *subletting,* or (b) an amount equal to (a) plus one-half of the amount by which the annual total rent (after deducting any third party leasing commissions) received by Lessee from such *sublessee* ... exceeds (a). (Emphasis added.)

If the transaction is an assignment of the Amended Prime Lease, Paragraph 8 is properly read as follows:

> [I]n no event shall the annual total rent be less than the greater of (a) the average total rent paid by Lessee to Lessor for the three (3) years immediately proceding [sic] such *assignment...,* or (b) an amount equal to (a) plus one-half of the amount by which the annual total rent (after deducting any third party leasing commissions) received by Lessee from such ... *assignee* exceeds (a). (Emphasis added.)

Plaintiffs offer an interpretation of Paragraph 8 that the Court rejects. In the case of the assignment from National to Topvalco, plaintiffs have read Paragraph 8 as follows:

> [I]n no event shall the annual total rent be less than the greater of (a) the average total rent paid by Lessee to Lessor for the three (3) years immediately proceding [sic] such *assignment...,* or (b) an amount equal to (a) plus one-half of the amount by which the annual total rent (after deducting any third party leasing commissions) received by Lessee from such *sublessee...* exceeds (a). (Emphasis added.)

By reading Paragraph 8 in this way, plaintiffs have come to the conclusion that they are entitled to a rent increase from $259,000.00 to $283,500.00 per year. Lessee National paid to lessor plaintiffs $259,000.00 per year for each of the three years preceding the assignment. Therefore, (a) equals $259,000.00. Sublessee Schnucks paid to lessee National $308,000.00 per year. Therefore, (b) equals $259,000.00 + ½ ($308,000.00 − 259,000.00) = $283,500.00.

Under the Court's interpretation of Paragraph 8, the rent received by the lessee from the sublessee is simply not taken into account when the transaction at issue is an assignment of the Amended Prime Lease. Instead, the formula considers the amount that the lessee received from the assignee for the assignment. Lessee National paid to lessor plaintiffs $259,000.00 per year for each of the three years preceding the assignment. Therefore, (a) equals $259,-

000.00. Lessee National did not receive anything from assignee Topvalco for the assignment except Topvalco's contractual obligation to pay to plaintiffs National's rent of $259,000 per year. Therefore, (b) equals $259,000.00 + ½ ($259,000 − 259,000.00) = $259,000.00. Because (a) is equal to (b), plaintiffs' annual rent would remain at $259,000.00

Because lessee National did not receive anything from Topvalco for the assignment, no rent increase was due under the formula. Plaintiffs allege that Topvalco/Kroger actually paid National for the assignment. The payments were allegedly made in the form of transactions in which Topvalco/Kroger discharged or satisfied some other unrelated business debts owed to it by National. Although plaintiffs would be entitled to a rent increase if there was such consideration paid for the assignment, plaintiffs have not come forward with any evidence of such side bargains or outside dealings. Defendants' motions for summary judgment have been pending for over one year. Plaintiffs' mere speculation and suggestion about the existence of dealings between Topvalco/Kroger and National is not sufficient to survive defendants' motions for summary judgment at this late stage.

■ Plaintiffs assert that defendants were aware that plaintiffs interpreted paragraph 8 to provide them with a rent increase after every assignment or sublease. Plaintiffs have attached several exhibits in which they communicated this interpretation to defendants. The rule in contract interpretation is to ascertain the intent of the parties and to give effect to that intent. *Barklage v. Metropolitan Life Ins. Co.,* 614 F.Supp. 51, 58 (W.D.Mo.1985). Where there is no ambiguity in the contract the intent of the parties is to be gathered from the language of the contract alone. The meaning of the unambiguous language of the contract is a matter of law for the Court's decision, not a question of fact. *Id.* (*citing J.E. Hathman, Inc. v. Sigma Al-*

*pha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973)). Ambiguity does not arise from a contract merely because the parties disagree as to how the contract should be construed. *Id.* The Court considers the language of Paragraph 8 to be clear and unambiguous concerning the rent due plaintiffs after a sublease or assignment. Therefore, plaintiffs' interpretation that Paragraph 8 provides for automatic increases after each sublease or assignment is insufficient to contravene the clear language of the Amended Prime Lease that provides otherwise.

■ Finally, plaintiffs allege that National assigned the Amended Prime Lease to Topvalco instead of Kroger in order to avoid a merger of the Amended Prime Lease and sublease interests. Plaintiffs allege that they would have received a rent increase if the Amended Prime Lease and sublease interests would have merged with Kroger. Kroger, however, assigned the sublease to Schnucks prior to the time that National assigned the Amended Prime Lease to Topvalco/Kroger.[3] There would have been no merger because Kroger/Topvalco never held both the Amended Prime Lease and the sublease at the same time.

Plaintiffs assert that a merger would have occurred had they not been duped into agreeing to Kroger's assignment of the sublease to Schnucks. On November 28, 1986 plaintiffs notified Kroger and Schnucks that plaintiffs agreed to the assignment of the sublease. Also on November 28, 1986 National informed plaintiffs that it intended to assign the Amended Prime Lease to Kroger. This information was delivered to plaintiffs after they agreed to Kroger's assignment of the sublease to Schnucks. According to plaintiffs, "National and Kroger thereby induced plaintiff into agreeing to the assignment to Schnucks by failing to disclose to plaintiff that Kroger was assuming National's interest...." Plaintiffs argue that if they knew of the intended assignment of the Amended Prime Lease from National to

---

**3.** There is no suggestion that Kroger assigned the sublease to Schnucks in order to thwart a

rent increase on behalf of plaintiffs.

Kroger/Topvalco, plaintiffs would not have approved of the sublease assignment from Kroger to Schnucks. Therefore, Kroger would have held both the Amended Prime Lease and the sublease and the interests would have merged. In their "we were duped out of rent increase following a merger" theory, plaintiffs assume that National would have assigned the Amended Prime Lease to Kroger/Topvalco even if plaintiffs did not permit the assignment of the sublease from Kroger to Schnucks. There is no evidence that such an assumption is warranted. If plaintiffs had not allowed Kroger to assign the sublease to Schnucks, it is unknown whether National would have assigned the Amended Prime Lease to Kroger. Plaintiffs' conjecture about conspiracies to deprive them of a rent increase is no substitution for substantiation in a two year old action.

In sum, prior to the assignment of the Amended Prime Lease from National to Topvalco, Schnucks paid annual rent of $308,000.00 to National. National paid annual rent of $259,000.00 to plaintiffs. After the assignment, Schnucks paid annual rent of $308,000.00 to Topvalco. Topvalco paid annual rent of $259,000.00 to plaintiffs. No evidence before the Court indicates that Kroger/Topvalco paid any additional sums to National for the assignment. Under these circumstances plaintiffs are not entitled to a rent increase under Paragraph 8 of the Amended Prime Lease. For the foregoing reasons, the Court enters summary judgment in favor of all defendants and against plaintiffs on the merits of Count I of plaintiffs' second amended complaint.

### Count II—V

Counts II, III, IV, and V of plaintiffs' second amended complaint were dependent on plaintiffs' allegation that the assignment of the Amended Prime Lease from National to Topvalco triggered an increase in plaintiffs' rent of which plaintiffs were deprived. As was discussed *supra*, the assignment did not trigger a rent increase and no contract or valid business expectancy was breached. Therefore, the Court enters summary judgment in favor of all defendants and against plaintiffs on the merits of Count II, III, IV, and V of plaintiffs' second amended complaint.