Kala L. WELHOFF, et al., Respondent,

v.

## FARM BUREAU TOWN & COUNTRY INSURANCE COMPANY, Appellant.

### No. WD 58029.

Missouri Court of Appeals, Western District.

June 5, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 2001.

Application for Transfer Denied Oct. 23, 2001.

Fletcher Allen Speck, Kansas City, for appellant.

John Henry Edmiston, Kansas City, for respondent.

Before Presiding Judge JAMES M. SMART, Jr., Judge JOSEPH M. ELLIS and Judge LAURA DENVIR STITH.[1]

LAURA DENVIR STITH, Presiding Judge.

Farm Bureau Town and Country Insurance Company ("Farm Bureau") appeals the trial court's grant of summary judgment to Plaintiffs Kala Welhoff and James and Joan Welhoff (hereinafter referred to collectively as "the Welhoffs") on their claim for $25,000 in insurance coverage and post-judgment interest of $28,977.90, plus such additional interest as accrues until the judgment is paid. Farm Bureau argues that the trial court erred in awarding post-judgment interest, because it tendered the full $25,000 then due on the date of the underlying judgment and because it reached an agreement with the Welhoffs to purchase an annuity. It argues that this agreement should be found to preclude the running of interest on the judgment.

We find that Farm Bureau's purported tender of its policy limits was conditional in nature and thus did not stop the running of interest and that the purchase of the annuity would not affect the Welhoffs' right to interest up until the date of purchase. Accordingly, the trial court below properly entered partial summary judgment for the Welhoffs on these two issues. A factual question exists as to when and if the Welhoffs became aware of and approved the purchase of the annuity some 15 months after the judgment, however. If they were aware of and did agree to this annuity purchase in satisfaction of Farm Bureau's judgment obligation, that would stop the running of interest once the approval and purchase occurred. The amount of interest to which the Welhoffs

1. Judge Stith was a member of this Court at the time this case was submitted and was specially appointed to remain on this case following her appointment to the Supreme Court of Missouri.

are entitled depends on resolution of that factual issue. We therefore remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 3, 1994, Denita Craig was killed in a car accident while riding as a passenger in a car driven by her husband, Brandon Craig. Prior to the accident, Mr. Craig had purchased an automobile liability insurance policy from Appellant Farm Bureau. The policy became effective prior to the accident, but it had a "family exclusion" clause that limited Farm Bureau's liability to $25,000 for injuries to or the death of any family member due to an accident for which Mr. Craig was liable.

On September 27, 1994, Denita Craig's daughter, Kala Welhoff, filed a petition in the Circuit Court of Johnson County, Missouri, against Mr. Craig, seeking damages for the wrongful death of her mother. Her mother's parents, James and Joan Welhoff, were added as plaintiffs in May 1996.

On April 10, 1997, Mr. Craig entered into an agreement with all three Welhoffs, entitled "Confession of Judgment, Contract to Limit Recovery and Assignment Of All Claims," in which Mr. Craig consented to a judgment against him for $75,000 in favor of his deceased wife's daughter, Kala, and for $75,000 in favor of his deceased wife's parents, James and Joan Welhoff, jointly, together with interest as determined by the court, and costs. In the contract, the Welhoffs agreed to limit execution of the judgment to Mr. Craig's insurance coverage and not to execute against any of his personal assets or income. The contract also stated, however, that the parties believed that the insurance coverage available to Mr. Craig was greater than $25,000, but in the event that it was later determined that Mr. Craig's

liability coverage was in fact limited to $25,000, then Farm Bureau should pay that amount to Kala Welhoff in satisfaction of her portion of the judgment and that James and Joan Welhoff would waive "any right to recover any portion of such coverage and/or payment." The court entered judgment against Mr. Craig pursuant to the terms of this agreement on that same day.

On December 9, 1997, the Welhoffs filed a petition for equitable garnishment against Farm Bureau, claiming that Farm Bureau was obligated to pay them $150,000—the full amount of the judgment—as well as prejudgment and post-judgment interest on that amount. Farm Bureau filed a counterclaim for declaratory relief, asserting that its liability was limited to $25,000 based on the household exclusion contained in its policy. It further asserted that it had *already tendered* $25,000 to the Welhoffs as well as court costs "in full satisfaction of its coverage obligations" under Mr. Craig's insurance policy, and, therefore, was not liable for any interest.

On March 15, 1999, the Welhoffs filed a motion for summary judgment in which they, in effect, acknowledged they were entitled to only $25,000 of the $150,000 judgment itself. They also claimed, however, that under the terms of Mr. Craig's particular contract of insurance with Farm Bureau, they were also entitled to prejudgment and post-judgment interest on the entire judgment—$150,000—and not merely on the $25,000 net judgment after application of the household exclusion, stating:

> The sole issue for this Court to decide is whether Defendant Farm Bureau Town and Country Insurance Company of Missouri's policy of insurance issued to Brandon Craig provides for payment of prejudgment and post-judgment interest based upon the amount of the judgment and not any policy limits.

Such issue is a matter of law which may be decided by this Court pursuant to an appropriate Request for Summary Judgment.

. . . .

Plaintiff prays for a Judgment against [Farm Bureau] of Missouri pursuant to their equitable garnishment action in an amount equal to the [$25,000,] which Defendant [Farm Bureau] is obligated to pay under Missouri Financial Responsibility Law, and for an additional judgment for prejudgment interest on the sum of [$150,000] from August 19, 1995, to April 10, 1997, the date of this Court's judgment plus a further judgment for post-judgment interest on the sum of [$150,000] from April 10, 1997, to the date that this Court's Judgment Entry and until such judgment has been *paid* to Plaintiffs or *tendered* to the Court, for [Plaintiffs'] costs incurred herein and for such other and further relief as this Court may deem just and proper.

(emphasis added). The Welhoffs based their claim for interest on the entire judgment on a provision of Mr. Craig's insurance policy with Farm Bureau, which states:

[Farm Bureau must pay] all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before [Farm Bureau] has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of [its] liability thereon.

(emphasis added).

Farm Bureau failed to timely file a response to the Welhoffs' motion for summary judgment or to request an extension of time to file a response prior to the hearing on the motion held on May 17, 1999. At the hearing, the Welhoffs presented evidence and argument that Farm Bureau had yet to pay them either the $25,000 that it owed them or the interest they sought in conjunction with the suit. Despite its failure to timely file a response to the motion for summary judgment, Farm Bureau was permitted to submit an affidavit signed by its counsel in which it denied the Welhoffs' statement that Farm Bureau had not paid them the amount of the judgment entered in the Welhoffs' favor, stating:

On numerous occasions, both before and after the filing of ... [the underlying case], defendant [Farm Bureau] offered to pay the sum of $25,000 to [the Welhoffs] in settlement of their claims against Farm Bureau's insured, Brandon Craig ... All such offers were refused.

On the date the consent judgment was entered in the underlying case, the attorney for defendant Farm Bureau again offered on behalf of Farm Bureau to immediately pay the sum of $25,000 to plaintiffs, or, as an alternative, proposed to plaintiffs' attorney that, in lieu of defendant Farm Bureau paying the sum of $25,000 directly to plaintiffs in partial satisfaction of the underlying judgment, that Farm Bureau would be willing to purchase an annuity for the benefit of the minor plaintiff ... That offer was confirmed in writing by letter to plaintiffs' attorney dated April 15, 1997 ...

... [P]laintiffs accepted Farm Bureau's offer of the structured settlement as originally proposed.

... [O]n July 10, 1998, Farm Bureau purchased an annuity for Kala ... providing the identical benefits as originally proposed and as eventually accepted by plaintiffs ...

Farm Bureau argued at the hearing that it had thus offered to pay $25,000 to the Welhoffs and had been offering them that amount since the court entered the con-

sent judgment against Mr. Craig. It claimed that the Welhoffs ultimately accepted the offer of the annuity. Farm Bureau stated that pursuant to that agreement, it did purchase the annuity approximately 10 months before the hearing, and thus the Welhoffs were not entitled to any interest.

In turn, the Welhoffs argued that they had no knowledge that Farm Bureau purchased the annuity on Kala's behalf and that they had never agreed to the purchase of such an annuity in satisfaction of the judgment. They stated that they had, to the contrary, notified Farm Bureau that because Kala was a minor, the court had to approve any proposed payment that benefited her, that Farm Bureau had never sought approval of the probate court, that Farm Bureau never notified them of the purchase of any annuity, and that, in fact, they were unaware that Farm Bureau had purchased the annuity until they learned of it during discovery, stating at the hearing:

> We had made demand on them [Farm Bureau] back in September or November of last year [that] they needed to get an order to the Probate Court approving this settlement. If they were going to move forward with it, they needed to do it. I [counsel for the Welhoffs] hadn't heard anything, other than whenever I filed my requests for production, requests for admission. And whenever I filed those requests for production and requests for admissions, unbeknownst to me I was provided with information to a Canada Life Insurance Company, and also a check made payable from, apparently, Farm Bureau to this same Canada Life Insurance Company [to purchase the annuity]. I didn't know anything.
>
> . . . .
>
> [W]henever I was doing production requests and I found out this thing [the annuity] had been purchased, that was the first thing I knew. If it's been purchased, I don't know where it is, I don't know who it's made payable to. I can tell you I don't have anything, and I can tell you the Probate Court has not approved it.

In response, Farm Bureau admitted that the probate court had not approved the purchase of the annuity, but it claimed the Welhoffs had agreed to it. Finally, after all the evidence had been presented, the court stated:

> *I will either determine that there was a settlement of this matter, or that there wasn't.* If there's no settlement, then you pay the 25,000 cash in your annuity. And the other issue is if I find in [the Welhoffs'] favor on the matter of whether there was a settlement or not, then I also have to determine whether interest should run, if at all.
>
> . . . I need to have you provide me with copies of things that you believe indicate that this matter was settled with an agreement to buy an annuity, and [Farm Bureau], you need to give me a document that would indicate that you had an offer with a date on it to pay $25,000.

(emphasis added).

On October 22, 1999, based on the evidence presented at the hearing and on all documents filed with the court, the court entered a judgment in favor of the Welhoffs, ordering Farm Bureau to pay them the $25,000 not subject to the exclusion as well as post-judgment interest on the entire $150,000 judgment, stating as follows:

> . . . [U]nder the policy of insurance at issue in this case, the amount of liability coverage available to Brandon Craig for wrongful death claims arising from the death of Denita Craig in an automobile accident occurring on or about July 3, 1994, is limited to the sum of $25,000.

In accord with its previous ruling, the Court finds that Defendant Farm Bureau Town & Country Insurance Company of Missouri is not liable to [the Welhoffs] for any prejudgment interest; the Court does further find Defendant Farm Bureau Town & Country Insurance Company of Missouri to be liable for post[-]judgment interest on the entire judgment of one hundred fifty thousand dollars ($150,000) at the legal rate. It is, therefore,

Ordered, Adjudged and Decreed that, under the policy of automobile liability insurance issued by Defendant [Farm Bureau] to Brandon Craig, the total amount of bodily injury liability coverage available for wrongful death claims arising from the death of Denita Craig in an automobile accident occurring on or about July 3, 1994, is limited to the sum of $25,000;

Further Ordered, Adjudged and Decreed that judgment shall be entered in favor of [the Welhoffs] and against Defendant Farm Bureau Town & Country Insurance Company of Missouri in the sum of twenty-five thousand dollars ($25,000), that representing the sum that it is obligated to pay [the Welhoffs] pursuant to the contract of insurance furnished Brandon Craig, together with interest in the sum of twenty-eight thousand nine hundred ninety-seven dollars twenty-six cents ($28,997.26) as of June 3, 1999, plus further interest on April 10, 1997, judgment at the legal rate from and after June 3, 1999. Costs of this action are assessed to the Defendant.

Farm Bureau appeals the trial court's judgment. It argues that the trial court erred in entering summary judgment in favor of the Welhoffs, because an issue of fact exists as to whether there was an agreement between the Welhoffs and Farm Bureau to purchase the annuity and whether Farm Bureau had tendered payment to the Welhoffs in satisfaction of the judgment, and, as such, the court should not have granted summary judgment to the Welhoffs on their claim for post-judgment interest. The Welhoffs do not appeal the ruling denying them prejudgment interest.

## II. STANDARD OF REVIEW

On appeal from the grant of summary judgment, we review the record in the light most favorable to the party against whom the judgment was entered. *Behlmann Pontiac GMC Truck, Inc. v. Harbin*, 6 S.W.3d 891, 892 (Mo. banc 1999). Summary judgment is appropriate when the pleadings, discovery, and affidavits reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c); *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). Once the movant has demonstrated that no genuine issue of material fact exists, the burden shifts to the non-movant to show that there is a genuine dispute as to the material facts supporting the moving party's right to summary judgment. *ITT*, 854 S.W.2d at 381–82. Where a defendant pleads an affirmative defense, then the burden is on the plaintiff to show that defendant will be unable to prove one or more elements of that defense. *Id.* at 383. A genuine issue exists if there is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.* at 382. Mere speculation and conjecture are not enough to create a genuine issue. *Id.* at 378; *Larison v. Pub. Water Supply Dist. No. 1 of Andrew County*, 998 S.W.2d 192, 194 (Mo.App. W.D.1999). We review the legal issues and whether there was an issue of material fact *de novo*. *Tuttle v. Muenks*, 21 S.W.3d 6, 8 (Mo.App. W.D.2000).

## III. PROPRIETY OF SUMMARY JUDGMENT

On appeal, Farm Bureau argues that the trial court erred both in awarding $25,000 to the Welhoffs and in awarding post-judgment interest to them, because a question of fact exists as to whether Farm Bureau tendered $25,000 to the Welhoffs on the day of the judgment, thus precluding the running of any interest on that judgment. It argues that a further issue of fact exists as to whether the Welhoffs accepted Farm Bureau's offer to purchase the annuity and whether Farm Bureau bought and paid for the annuity in reliance on that agreement. If either of these factual issues is resolved in its favor, Farm Bureau argues, it would not be required to pay the Welhoffs post-judgment interest, and the purchase of the annuity would be considered to have satisfied its $25,000 judgment obligation.

### A. Enforceability of Interest Provision of Insurance Contract.

We will address Farm Bureau's contentions about the effect of its alleged tender and about its purchase of the annuity in turn. As a preliminary matter, however, we note what is *not* at issue on this appeal. Farm Bureau does *not* dispute that its contract with Mr. Craig (through whom the Welhoffs claim) required it to pay interest on the entire amount of any judgment against its insured unless and until it tendered or paid its coverage limit into court or to the insured. The contract states as follows:

> [Farm Bureau must pay] all interest *on the entire amount of any judgment* therein which accrues after entry of the judgment and before [Farm Bureau] has *paid or tendered or deposited* in court that part of the judgment which does not exceed *the limit of [its] liability* thereon.

(emphasis added).

This clause, by it terms, unambiguously requires Farm Bureau to pay post-judgment interest on the *entire* amount of a judgment up until the time that it pays, or tenders, or deposits in court the portion of the judgment that does not exceed its policy limits.[2] Due to the length of time that has passed since the entry of the consent judgment, the trial court found that $28,997.26 had accrued in interest through June 3, 1999, and that interest would continue to accrue until Farm Bureau complied with the requirements of this provision of the contract. While Farm Bureau at various points argues that it would be inequitable to give the Welhoffs over $28,000 in interest on a $25,000 judgment, it does not dispute that this provision is in its contract, nor does it claim that there is any authority supporting a refusal to enforce this term, which it chose to include in a contract that it wrote. To the contrary, similar clauses have been enforced in other jurisdictions.[3]

---

2. Even were the policy ambiguous on this point, we are guided by the settled principle that an "ambiguous insurance policy is construed against the insurer because the policy's purpose is to provide protection [to the insured]." *Hocker Oil Co., Inc. v. Barker Phillips Jackson, Inc.*, 997 S.W.2d 510, 514 (Mo. App. S.D.1999); *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992).

3. *See, e.g., Pinto v. Buckeye Union Ins. Co.*, 193 Mich.App. 304, 484 N.W.2d 9, 11 (1992) (holding that because insurance policies "should be interpreted in favor of the insured and against the insurer," the insurer was responsible for "the payment of post[-]judgment interest on the entire amount of the judgment from the date of the entry of the judgment until the date that the insurer tenders full payment of its liability under the judgment"). *See also Murray v. Nationwide Mut. Ins. Co.*, 123 N.C.App. 1, 472 S.E.2d 358, 360 (1996); *DiBenedetto v. Estate of DiBenedetto*, 218 N.J.Super. 143, 526 A.2d 1161, 1163 (1986).

Moreover, we note that this provision serves the salutary purpose of encouraging the insurer to expeditiously pay that portion of a judgment that is not subject to dispute, and it ensures that, if the insurer does so, it will be protected from the accrual of interest on any part of the judgment while the coverage issue is being litigated. It is no doubt for the latter reason that Farm Bureau included the provision in its contract, although on the present facts the provision will not benefit Farm Bureau if this Court determines that it neglected to pay or tender its policy limit in a manner specified in its contract. We thus turn to the issue whether Farm Bureau did pay or tender the policy limit in a manner specified by the contract.

*B. Tender Was Not Made Because the Offer of Payment Was Conditional.*

■ In the trial court, the Welhoffs moved for summary judgment on their claim for post-judgment interest on the entire $150,000 judgment on the basis that, as Farm Bureau neither paid its $25,000 liability limit directly to them or into court nor tendered it to them in a timely and proper manner, interest on the judgment has continued to accrue pursuant to the terms of Farm Bureau's own contract. In support, they relied on Farm Bureau's admissions during discovery that it had neither paid the $25,000 into court nor paid it to the Welhoffs directly. Farm Bureau further admitted that as of the answer date of June 11, 1998, it had not purchased any annuity or other structured settlement satisfying the judgment.

Farm Bureau did deny in its answers to the Welhoffs' requests for admissions that it had never tendered any sums to satisfy any portion of the judgment, however. Were this the only evidence before the court below, it thus would not have had an evidentiary basis for ruling that Farm Bureau failed to tender its policy limits. In its

late-filed suggestions and affidavit filed in opposition to summary judgment, however, Farm Bureau explained that it believes that it did "tender" its policy limits to the Welhoffs when, on the day of judgment and thereafter, it told them that it would pay them $25,000 in settlement of their claims against it. It contends that this constituted a "tender" under its policy, and thus precluded the running of interest.

As we noted in *Curnutt v. Scott Melvin Transp., Inc.,* 903 S.W.2d 184, 190 (Mo. App. W.D.1995), "[w]here there is an *agreement* to pay money, tender generally occurs when there is a combination of readiness, willingness, and the ability to pay by the indebted party ." (emphasis added). We disagree that Farm Bureau's offer constituted a tender of its policy limits pursuant to an agreement. Farm Bureau did not unconditionally offer to pay its policy limits to the Welhoffs. It offered to pay them *in settlement* if the Welhoffs agreed to give up their claim that they were entitled to prejudgment and post-judgment interest and that a higher policy limit applied. It thus made a *conditional* offer to tender its policy limits. The Welhoffs did not accept that offer, for they believed that they were entitled to additional monies, and they proceeded to litigate that issue in a garnishment action. They never accepted the offer to settle for $25,000 in return for their release of their other claims, and, so far as the record shows, Farm Bureau never made an unconditional tender of the $25,000.

■ Such conditional tenders do not constitute the type of tender that will stop the running of interest on a judgment. Thus, *Garney Cos., Inc. v. H & K Dev. Inc.,* 635 S.W.2d 85 (Mo.App. W.D.1982), considered whether the running of interest due under a contract stopped when the defendant tendered a check that contained a release of all claims on the back of it.

This Court found that the tender was not effective to stop the running of interest, because "[a] tender must be unconditional and unqualified to be a valid tender, and a tender, the acceptance of which requires the abandonment of the creditor's position, is not a valid tender." *Id.* at 86 (citations omitted). Numerous other cases reach the same result. *See, e.g., Ins. Co. of N. Am. v. Skyway Aviation, Inc.,* 828 S.W.2d 888, 892 (Mo.App. W.D.1992) ("[c]onditioning a proposed tender upon release of all claims or other reciprocal action on the tenderee's part invalidates the tender and continues the accrual of prejudgment interest"); *Mercantile Bank of Sikeston v. Moore,* 935 S.W.2d 762 (Mo.App. S.D.1996) (conditional tender in return for release was really settlement offer, not tender of the type which would stop running of interest).

Because we find that the tender here was conditional and thus was not sufficient to stop the running of interest, we need not reach the Welhoffs' additional arguments that Farm Bureau is precluded from raising its defense of tender because it failed to plead it as an affirmative defense as required by Rule 55.08 and because its response to the Welhoffs' motion for summary judgment was untimely and therefore should not have been considered by the trial court. For the reasons stated above, we affirm the trial court's grant of summary judgment to the Welhoffs on Farm Bureau's affirmative defense of tender.

### C. Annuity Payment.

█ Farm Bureau also argues that, even if its offer to settle for $25,000 did not constitute a valid tender, it later did purchase an annuity valued at more than $25,000, and the Welhoffs did agree to accept the annuity in settlement of their claims, and, in light of this acceptance, the Welhoffs are not now entitled to an additional judgment for the $25,000 liability limits, plus interest. We agree with Farm Bureau that a question of fact remains on the record as to the annuity, although we do not agree that this would preclude recovery of any interest by the Welhoffs.

The consent judgment was entered on April 10, 1997. Farm Bureau claims that it offered to purchase an annuity by letter dated April 15, 1997. Farm Bureau also claims that the Welhoffs accepted a similar proposed structure by letter dated September 12, 1997. That letter on its face requires that the court approve the proposed annuity, however, and Farm Bureau has not shown that any such approval occurred. Moreover, Farm Bureau admitted in its answers to the Welhoffs' requests for admissions that as of June 11, 1998, the day it answered the requests, it had not purchased an annuity. In its opposition to summary judgment, it further states that it did not actually purchase the annuity until July 10, 1998, some 15 months after the consent judgment was entered on April 10, 1997. Thus, interest necessarily accrued on the judgment at least for that period of time and continued to accrue at least until the parties reached a settlement agreement and purchased the annuity pursuant to that agreement, for in no way could Farm Bureau be held to have paid its policy limits until that date.

While the Welhoffs' entitlement to some post-judgment interest thus is established beyond dispute and is an appropriate subject for summary judgment, their entitlement to post-judgment interest from July 10, 1998, to the present is a factual issue as to which summary judgment should not have been entered. Specifically, while Farm Bureau claims that it purchased the annuity with the Welhoffs' consent, the Welhoffs claim that they never consented to the purchase; that they were unaware that an annuity had actually been purchased until Farm Bureau so claimed in its pleadings in this lawsuit; that they have not ratified its purchase; that they do not

want the annuity or its benefits; and that they are still awaiting tender or payment of the liability limits to them or into court. This confusing state of facts raises a factual issue that the court below must resolve as to when, if ever, the Welhoffs authorized or ratified the purchase of the annuity.[4] This precludes the grant of summary judgment on this aspect of their claim.

For the reasons stated above, we affirm the grant of summary judgment to the Welhoffs on Farm Bureau's affirmative defense of tender, and the grant of summary judgment on the Welhoffs' claims of post-judgment interest from April 10, 1997, until July 10, 1998. We reverse and remand the grant of $25,000 plus post-judgment interest after that date so that the court can determine whether the Welhoffs authorized or ratified Farm Bureau's purchase of an annuity on July 10, 1998, or thereafter and whether they accepted its benefits. If so, then interest would stop running as of that date, and their acceptance of the annuity would satisfy the $25,000 due under the contract. If not, then the court should additionally award the Welhoffs the $25,000 due under the contract as well as additional post-judgment interest from July 10, 1998, until such time as Farm Bureau pays or tenders its policy limits to the Welhoffs or pays them into court.

Affirmed in part and reversed and remanded in part.

Presiding Judge JAMES M. SMART, JR. and Judge JOSEPH M. ELLIS concur.

---

**4.** As the trial judge himself stated below, in order to determine Farm Bureau's liability for post-judgment interest, *"I will either determine that there was a settlement of this matter,* or that there wasn't." The resolution of such disputed issues of fact is not appropriate for summary judgment.