IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
SYLVIA NORMAN, )
 )
 Appellant, )
 )
v. ) WD83345 (Consolidated with WD83378)
 )
PROGRESSIVE PREFERRED ) Opinion filed: March 2, 2021
INSURANCE COMPANY, )
 )
 Respondent, )
 )
AMBER RALSTON, )
 )
 Appellant. )

 APPEAL FROM THE CIRCUIT COURT OF CASS COUNTY
 THE HONORABLE WILLIAM H. COLLINS, JUDGE

 Before Division Three: Edward R. Ardini, Jr., Presiding Judge,
 Alok Ahuja, Judge and Gary D. Witt, Judge

 Sylvia Norman’s husband was killed in an automobile accident with Amber Ralston.

Ralston was insured by Progressive Preferred Insurance Company. Norman obtained a wrongful

death judgment against Ralston awarding approximately $6 million in actual damages and $1

million in aggravated circumstances damages, prejudgment interest, post-judgment interest, and

statutory court costs. Following the entry of judgment, Progressive tendered the bodily injury

limits of liability of $100,000.00 together with $3,118.95 for statutory costs and $8,600.00 for

post-judgment interest. Norman filed a Partial Satisfaction of Judgment and initiated this equitable
garnishment action against Progressive contending that Progressive had failed to pay all of the
interest and court costs owing under Ralston’s automobile insurance policy. The trial court granted

summary judgment to Progressive. Norman and Ralston appeal. We reverse and remand.

 Factual Background
 On the morning of April 9, 2014, Norman’s husband Robert Norman was driving a vehicle

on northbound Highway 7 in Cass County. Robert Norman’s vehicle had stopped or slowed as law

enforcement officers removed a dead deer from the roadway. Ralston, who was also driving

northbound on Highway 7, violently rear-ended Robert Norman’s vehicle. Robert Norman died as

a result of the injuries he suffered in the accident. Norman contended that Ralston failed to see the

stopped or slowed traffic in front of her because she was looking at a website on her cell phone

while driving.

 At the time of the accident, Progressive insured Ralston under an automobile insurance

policy. The policy had limits of liability for bodily injury of $100,000.00 per person and

$300,000.00 per accident, and a $50,000.00 limit of liability for property damage claims. The

policy contained provisions governing Progressive’s obligation to pay prejudgment interest

awarded against its insured. One such provision stated that if Progressive “make[s] an offer to pay

[its] limit of liability, [it] will not pay any prejudgment interest accruing after [its] offer to pay [its]

limit of liability.”1

 On May 2, 2014, Ralston’s counsel sent a letter to Norman’s counsel, which read in

relevant part:

 I have been advised by Progressive Insurance Company that it has $100,000
 of coverage for Amber Ralston under policy number 45405113-9. Progressive
 Insurance Company has authorized me to extend a settlement offer of the policy
 limits of $100,000 in exchange for a release of your client’s claims against Amber
 Ralston.
Ralston’s counsel sent a second letter to Norman’s counsel on May 13, 2014. The May 13 letter

stated in its entirety:

 I am writing in follow up to our recent meeting regarding this matter. You
 requested a certified copy of the policy and [I] am enclosing a copy for you.

1
 The policy provisions governing prejudgment interest are described in further detail in our analysis.

 2
 You also requested a complete copy of all household policies. I have
 confirmed with Progressive that there were no other Progressive policies in effect
 at the time of the loss other than the one I have attached hereto. Please let me know
 if you need something from the insured verifying that there were no other policies.
 Additionally, I am confirming that Progressive has policy limits of
 $100,000.00 to settle this wrongful death claim.
 You indicated at our meeting that you have not made a policy limits
 settlement demand as of yet and that you needed this additional information before
 you did so. Please let me know if you need any additional information to move
 forward with this settlement.
(emphasis in original).
 On July 19, 2014, Norman’s counsel made a settlement demand on Ralston in the amount

of $950,000. Pursuant to section 408.040,2 the offer was kept open for ninety days.

 On August 12, 2014, Norman filed a wrongful death action against Ralston in the Circuit

Court of Cass County. The case was tried to the court on May 11, 2017. At trial, Ralston admitted

that she was 100% at fault, and presented no evidence.

 The trial court entered judgment in the wrongful death action on May 20, 2017, finding

that the accident was caused by Ralston’s distracted driving as she looked at the internet on her

phone for between 4.5 and 20 seconds while driving at or above highway speeds. The trial court

also found that Ralston’s driving ability was impaired by her consumption of alcohol and other

drugs, and by lack of sleep. The trial court awarded Norman $6,476,976.24 in actual damages and

$1,079,494.48 in aggravated circumstances damages. The court found that Norman had complied

with the requirements of section 408.040,3 and was entitled to prejudgment interest in the amount

of $476,976.24 on the actual damages award, and $79,494.48 on the aggravated circumstances

damages award. The trial court further determined that Norman was entitled to post-judgment

interest at the annual rate of 5.91% “until the judgments are fully paid.” Finally, the trial court

2
 Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated through the 2019 Cumulative
Supplement.
3
 In relevant part, section 408.040 provides that, “In tort actions, if a claimant has made a demand for payment of a
claim or an offer of settlement of a claim, . . . and the amount of the judgment or order exceeds the demand for payment
or offer of settlement, then prejudgment interest shall be awarded, calculated from a date ninety days after the demand
or offer was received[.]” § 408.040.3. Among other requirements, the claimant’s demand or offer must be in writing
and be left open for ninety days. See id.

 3
“assess[ed] the statutory court costs of this case against [Ralston] including all deposition expenses

and costs of $3,118.95 pursuant to Missouri Revised Statute § 492.590.”

 On May 26, 2017—six days after the entry of judgment—Progressive’s counsel sent

Norman’s counsel three checks: one for $100,000.00, the policy’s per-person bodily injury limit

of liability; one for $3,118.95 for “statutory costs”; and one for $8,600.00 for “post-judgment

interest.” On July 7, 2017, Norman filed a “Receipt in Partial Satisfaction of Judgment” in the trial

court, “acknowledg[ing] receipt of $111,718.95 to be applied to the costs, interest and judgment

balance pursuant to Section 408.040.”

 On October 25, 2017, Norman filed this equitable garnishment action in the Circuit Court

of Cass County under section 379.200, naming Progressive and Ralston as defendants. In her

petition, Norman sought “a money judgment against Defendant Progressive for coverages under

all auto policies plus prejudgment interest and the post-judgment interest and all court costs.”

 Progressive filed a motion for summary judgment. It argued that it paid all monies owed

under its insurance policy after the entry of Norman’s judgment against Ralston by tendering to

Norman the per-person bodily injury limit of liability of $100,000.00, along with $3,118.95 for

costs, and $8,600.00 for post-judgment interest. Progressive contended that it had no obligation

under the policy to pay any prejudgment interest on Ralston’s behalf because it had offered to pay

Norman the full $100,000.00 limit of liability shortly after the accident.
 The trial court granted Progressive’s motion for summary judgment. Both Norman and

Ralston appeal.

 Standard of Review
 On appeal, we “review[] a grant of summary judgment de novo.” Gall v. Steele, 547 S.W.3d

564, 567 (Mo. banc 2018) (citing ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.,

854 S.W.2d 371, 376 (Mo. banc 1993)). “Summary judgment shall be entered if there is no genuine

issue as to any material fact and the moving party is entitled to judgment as a matter of law.”

Wilmes v. Consumers Oil Co. of Maryville, 473 S.W.3d 705, 714 (Mo. App. W.D. 2015) (citing
Rule 74.04(c)(6)) (internal marks omitted). The Court reviews the record “in the light most

 4
favorable to the party against whom judgment was entered,” and gives the non-movant “the benefit

of all reasonable inferences from the record.” Medley v. Valentine Radford Commc’ns, Inc., 173

S.W.3d 315, 319 (Mo. App. W.D. 2005) (citing ITT Commercial, 854 S.W.2d at 376).

Additionally, “[t]he interpretation of an insurance policy is a question of law” which we review de

novo. Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 132 (Mo. banc 2007) (citations omitted).

 Discussion
 Norman raises three Points on appeal.4 First, she argues that Progressive was obligated

under its policy and state law to pay prejudgment interest, and has failed to do so. Second, Norman

argues that Progressive failed to pay all of the court costs owed under Missouri law in breach of

its policy obligations. Finally, Norman argues that because of Progressive’s failure to satisfy its

obligations to pay prejudgment interest and court costs, Progressive remains liable for post-

judgment interest which continues to accrue on Norman’s unsatisfied judgment against Ralston.

 I.
 Norman asserts that Progressive failed to satisfy its contractual and statutory obligation5 to

pay prejudgment interest. Progressive contends that its obligation to pay prejudgment interest

under the policy was extinguished when it offered to pay to Norman the policy limits shortly after

the accident, and before prejudgment interest began to accrue. We find that Progressive’s

“settlement offer of the policy limits of $100,000 in exchange for a release of [Norman’s] claims
against Amber Ralston” was not an “offer to pay” its limits of liability, but instead was a

conditional offer to settle Norman’s claims against Ralston. As a result, under the policy language,

4
 Progressive argues that Ralston did not preserve any challenges to the summary judgment ruling for review.
Progressive points out that Ralston did not oppose Progressive’s motion for summary judgment before it was granted,
and that the circuit court denied her motion to join in Norman’s motion to reconsider the summary judgment ruling.
It is unnecessary for us to decide this issue. Norman and Ralston filed joint briefs, and Progressive has not disputed
that Norman properly preserved the arguments made in the appellants’ joint filings. Therefore, whether Ralston is
separately entitled to raise these arguments is irrelevant to our disposition. For ease of reference, we refer to Norman
as the sole appellant throughout the remainder of our opinion.

5
 In addition to her argument based on the terms of the insurance policy issued by Progressive, Norman also asserts
that Progressive has an obligation related to the payment of prejudgment interest under section 303.190—Missouri’s
Motor Vehicle Financial Responsibility Law. Because we find in favor of Norman on her policy-based argument, we
do not address the additional arguments raised by Norman in Point I of this appeal.

 5
Progressive was not relieved of its obligation to pay prejudgment interest awarded in the wrongful

death action.

 Progressive’s responsibility to pay prejudgment interest on behalf of Ralston arises from

the language contained in its policy, and thus that is where we begin our analysis. Part I of the

automobile insurance policy Progressive issued to Ralston addresses “Liability to Others.” The

“Insuring Agreement” of Part I provides that Progressive will pay “damages for bodily injury and

property damage for which an insured person becomes legally liable because of an accident.”6 The

Insuring Agreement specifies that “[d]amages include prejudgment interest awarded against an

insured person.”

 The “Additional Payments” provision in Part I provides that, “[i]n addition to our limit of

liability, we will pay for an insured person: . . . prejudgment interest awarded against an insured

person on that portion of the judgment that does not exceed our Limits of Liability under this Part

I – Liability to Others.” The Additional Payments provision specifies that Progressive will only

pay prejudgment interest if a claimant makes a settlement demand meeting the requirements of

section 408.040.3. There is no dispute that the requirements of section 408.040.3 were satisfied or

that Norman is entitled to receive prejudgment interest on the judgment entered in the wrongful

death case. The issue before us is considerably narrower: Did Progressive remain obligated, under

the policy issued to Ralston, to pay prejudgment interest “on that part of the judgment that does
not exceed” the relevant policy limits or is Ralston, Progressive’s insured, solely responsible for

satisfying the entire award of prejudgment interest.

 Resolution of Progressive’s responsibility under the policy to pay prejudgment interest

centers on the following provision contained in the Additional Payments section:

 [i]f we make an offer to pay our limit of liability, we will not pay any prejudgment
 interest accruing after our offer to pay our limit of liability.

6
 Certain words and phrases are set forth in the policy in bold-faced text to indicate that they are expressly defined in
the policy. We have omitted that emphasis in quoting the policy provisions here. We note that the phrase at issue in
this Point on appeal—“offer to pay”—is not defined in the policy.

 6
Progressive argues that its May 2014 settlement offers constituted “offer[s] to pay [its] limit of

liability” under the above-quoted Additional Payments provision, thereby terminating its

obligation under the policy to cover any part of the award of prejudgment interest. Norman, on the

other hand, argues that the May 2014 offers did not constitute “offers to pay,” because those offers

were specifically contingent on Norman agreeing to fully release Ralston’s liability. Norman

deems Progressive’s May 2014 offers as conditional “offers to settle,” rather than unconditional

“offers to pay.” Norman argues that, under the plain language of the Progressive policy,

“Progressive could end its obligation to pay [prejudgment] interest only by making an

unconditional offer to pay the [policy] limits.” (Emphasis added.) We agree.

 “The general rule in interpreting insurance contracts is to give the language of the policy

its plain meaning.” Allen v. Cont’l W. Ins. Co., 436 S.W.3d 548, 554 (Mo. banc 2014) (citing

Gavan v. Bituminous Cas. Corp., 242 S.W.3d 718, 720 (Mo. banc 2008)). When the policy’s

language and terms are unambiguous, we will “enforce[] [the policy] as written.” Id. (citation

omitted). Ambiguities in the policy’s language are “resolve[d] . . . against the insurer-drafter.” Id.

(citations omitted).

 Missouri courts have not previously addressed the meaning of “offer to pay” in the precise

context presented in this appeal, however we have found helpful guidance from other jurisdictions.

A central tenet to our analysis is the observation that, when interpreting an insurance policy, the
terms “offer to settle” and “offer to pay” are “fundamentally different concepts.” Davis v. Allstate

Ins. Co., 747 N.E.2d 141, 148-49 (Mass. 2001). “[T]he former contemplates payment in exchange

for a release, the latter encompasses actual payment without a release.” Id. at 149. Where an

insurance policy “refers to an ‘offer to pay’ rather than an ‘offer to settle,’ and makes no provision

for the imposition of conditions on the offer to pay, [the insurer is] required to make an

unconditional offer to pay the policy limits in order to terminate its express obligation to pay . . .

interest.” See id. at 147-48, 149 (citing cases and noting that this is the “majority rule”); see also

Petry v. Richard, 532 So. 2d 286, 289 (La. Ct. App. 1988) (where insurance policy provided that
insurer will pay interest on damages until insurer “offer[s]” the amount due under the policy, the

 7
offer contemplated under the policy was “an ‘unconditional’ offer to pay,” and thus the insurer’s

offer to tender its policy limits in exchange for a release was not an “offer” within the meaning of

the policy).

 This Court embraced a similar view in Welhoff v. Farm Bureau Town and Country

Insurance Company, 54 S.W.3d 589 (Mo. App. W.D. 2001).7 In Welhoff, the insurance policy

required the insurer to pay interest on the judgment “which accrues after entry of the judgment and

before [the insurer] has paid or tendered . . . that part of the judgment which does not exceed the

limit of its liability thereon.” 54 S.W.3d at 592 (internal marks omitted). The insurer asserted that

“it told [the plaintiffs] that it would pay them $25,000 in settlement of their claims against it,” and

“this constituted a ‘tender’ under its policy,” thus “preclud[ing] the running of interest.” Id. at 596.

This Court disagreed, and found that the insurer’s offer did not constitute a “tender.” Id. We found

that rather than “unconditionally offer[ing] to pay its policy limits,” the insurer “offered to pay

[the plaintiffs] in settlement if [they] agreed to give up their claim[.]” Id. (emphasis in original).

We characterized the insurer’s offer as “a conditional offer to tender its policy limits,” and noted

that “[s]uch conditional tenders do not constitute the type of tender that will stop the running of

interest on a judgment.” Id. (emphasis in original).

 With this law in mind, we again turn to the language of the Progressive policy. The Insuring

Agreement specifies that Progressive will pay certain damages for which an insured becomes
legally liable, “includ[ing] prejudgment interest awarded against an insured person.” This

obligation to pay prejudgment interest only ceases if Progressive “make[s] an offer to pay [its]

limit of liability.” As explained above, we conclude that an “offer to pay” is not synonymous with

an offer to settle or compromise a claim; under the Progressive policy, an “offer to pay” the policy

limits must be unconditional in order to terminate its obligation to cover its part of the award of

prejudgment interest in the wrongful death action. See Davis, 747 N.E.2d at 147, 149 (“there is no

7
 We recognize that Welhoff did not involve a pre-trial offer but instead addressed a post-judgment tender by the
insurer, however, notwithstanding this distinction, the Court’s analysis is sufficiently analogous and, in our view,
lends support to our interpretation of Progressive’s policy.

 8
question that [these] terms are commonly understood to have distinct meanings” and the insurer’s

“conditional pretrial settlement offer did not constitute such an ‘offer to pay’”); Petry, 532 So. 2d

at 289.

 As a result, Progressive’s efforts to settle Norman’s claims in May 2014 did not constitute

an “offer to pay” the limits of the policy as that term is used in the Progressive policy and therefore

did not operate to terminate its obligation to pay prejudgment interest. Rather, Progressive offered

Norman “something substantially less, namely, payment of the policy limits in exchange for

[Norman’s] release of claims[.]” Davis, 747 N.E.2d at 147. Under the plain language of the policy,

Progressive’s obligation to pay prejudgment interest awarded against Ralston was not

extinguished.

 Point I is granted.

 II.
 In her second Point, Norman argues that the trial court’s grant of summary judgment should

be reversed because Progressive failed to pay all the court costs awarded against Ralston in the

wrongful death judgment. Specifically, Norman argues that the wrongful death judgment awarded

her statutory costs, including deposition costs of $3,118.95, but that Progressive tendered her a

check which paid only the deposition costs. Norman argues that Progressive failed to pay

additional costs to which she was entitled in the wrongful death action, including her filing fee and

service fees.

 Progressive does not dispute that it was contractually required to pay court costs assessed

against Ralston in the wrongful death action, in addition to its limit of liability. In its motion for

summary judgment, Progressive asserted that it had paid all of the costs imposed on Ralston by

the wrongful death judgment, consisting of deposition fees of $3,118.95. In her opposition to

Progressive’s motion, Norman contended that the check Progressive tendered to her for “statutory

costs” failed to include any payment for filing or service fees. In its reply memorandum,

Progressive explained that only the deposition costs had been taxed by the circuit court in the
wrongful death action. Progressive also noted that, although Norman claimed that she was entitled

 9
to the taxation of additional costs, the circuit clerk added only $100.00 in a “Statement of Total

Court Costs” issued to Norman on January 23, 2019 (almost two years after the entry of the

wrongful death judgment). Progressive pointed out that, because it had paid Norman one additional

day of post-judgment interest, or $1,258.82, on May 26, 2017, it had paid all court costs, even if it

were liable for the clerk’s belated assessment of an additional $100.00.

 Progressive’s summary judgment briefing established that the only costs that had been

taxed against Ralston in Norman’s wrongful death action were $3,118.95 for deposition costs, and

a $100.00 filing fee. No other costs have been taxed in the wrongful death case. Norman apparently

argues that Progressive’s May 26, 2017 tender was insufficient, because the check designated by

Progressive as payment for “statutory costs” failed to include the filing fee. Norman cites no

authority to support her argument that, notwithstanding the total amount Progressive paid, its

tender was insufficient because Progressive divided its payment between three checks.

 Point II is denied.

 III.
 Norman’s final Point argues that Progressive’s liability for post-judgment interest

continues to accrue because Progressive has not fully discharged its contractual and statutory

obligation to pay prejudgment interest under the policy issued to Ralston. In granting Point I, we

concluded that Progressive did not extinguish its obligation to pay prejudgment interest awarded

in the wrongful death action. Norman argues that until Progressive satisfies this contractual duty

by paying the prejudgment interest that accrued on that portion of the judgment that did not exceed

its limit of liability, it continues to be obligated to pay post-judgment interest on the entire

outstanding judgment under the Additional Payments provision. We disagree.

 The relevant provision in the “Additional Payments” section of the policy issued to Ralston

states that Progressive will pay:

 3. interest accruing after entry of judgment, until we have paid, offered to pay, or
 deposited in court, that portion of the judgment which does not exceed our limit of
 liability.

 10
Assigning a meaning to the phrase “that portion of the judgment which does not exceed our limit

of liability” is key to resolving this issue. See Levin v. State Farm Mut. Auto. Ins. Co., 510 S.W.2d

455, 461 (Mo. banc 1974) (“An insurance company’s liability is determined by the terms of its

policy” and courts cannot hold an insurance company liable for interest “except in compliance

with the policy terms.”). In other words, the relevant question becomes: does Progressive’s “limit

of liability” (as used in the Additional Payments provision) broadly encompass all monetary

responsibility under the policy—including supplemental payment obligations such as prejudgment

interest—or is its reach more narrowly confined to the limits of liability established on the policy’s

declarations page?

 Our Supreme Court addressed this issue in Levin, which involved a post-judgment interest

provision substantially similar to the one contained in the Additional Payments section of the

Progressive policy.8 The insurer in Levin had paid into the court the limit of liability for bodily

injury established on the policy’s declarations page, but the tender did not include accrued interest

and costs. 510 S.W.2d at 457-58. The Court held this was sufficient to terminate the insurer’s

ongoing liability for post-judgment interest despite the insurer’s other unsatisfied obligations under

the policy. Id. at 461. After explaining that the “agreement [in the policy] to pay court costs and

interest is not part of, but is a separate obligation beyond the limit of the company’s liability,” the

Court plainly stated that the insurer’s limit of liability “is fixed by the limit of liability stated in the
declarations.” Id. at 458 (internal marks omitted). This policy-based approach has been

consistently followed by other Missouri courts.9 See Auto-Owners Ins. Co. v Ennulat, 231 S.W.3d

297, 307 (Mo. App. E.D. 2007) (insurer is liable for post-judgment interest “only until such time

8
 The policy in Levin stated in relevant part: “(2) As respects the insurance afforded under coverages A and B and in
addition to the applicable limits of liability to pay: (a) … after entry of judgment, all interest accruing on the entire
amount thereof until the company has paid or tendered such part of such judgment as does not exceed the limit of the
company’s liability thereon[.]” Levin, 510 S.W.2d at 457-58.
9
 We note that Norman does not reference Levin in her briefing to this Court or make any effort to distinguish it or the
cases that followed. In fact, the only case cited by Norman addressing application of a similar post-judgment
supplemental payment provision is Burns v. Smith, 303 S.W.3d 505 (Mo. banc 2010). However, Burns does not
support Norman’s argument because, unlike Progressive, the insurer in Burns had not paid or otherwise tendered the
limit of liability under its policy and, as a result, remained responsible for post-judgment interest under the Levin
analysis.

 11
as it pays the policy limits”); White v. Auto Club Inter-Ins. Exch., 984 S.W.2d 156, 158-59 (Mo

App. W.D. 1998) (insurer’s liability to pay further interest ended when it paid the policy limit);

see also Lunde v. Am. Family Mut. Ins. Co., 297 S.W.3d 88, 93 (Mo. App. W.D. 2009) (affirming

trial court’s judgment that halted insurer’s obligation to pay post-judgment interest on the date it

paid the applicable limit of liability);10 cf. Burns v. Smith, 303 S.W.3d 505, 515 (Mo. banc 2010)

(obligation to pay post-judgment interest continued because insurer had not paid limits of liability

under the policy).

 Applying the aforementioned principles to the policy issued to Ralston compels the

conclusion that Progressive terminated its ongoing obligations relating to the payment of post-

judgment interest when it paid to Norman the $100,000.00 bodily injury liability limit, even though

Progressive’s May 2017 payment failed to discharge the insurer’s additional liability for

prejudgment interest. The declarations page in the Progressive policy clearly established the limit

of liability for bodily injury at $100,000.00. The policy additionally made clear that Progressive’s

contractual duty to pay prejudgment interest to Norman was “[i]n addition to [Progressive’s] limit

of liability” thus confirming that Progressive’s responsibility to pay prejudgment interest is a

separate obligation “beyond the limits of the company’s liability.” In accord with Levin and its

progeny, Progressive’s payment to Norman of the $100,000.00 bodily injury liability limit in the

days following the entry of judgment was sufficient under the Additional Payments provision of
Ralston’s policy to terminate Progressive’s obligations related to the payment of post-judgment

interest.

 Norman alternatively argues that the relevant limit of liability under the Progressive policy

is $150,000.00 (not $100,000.00) and that Progressive remains responsible for post-judgment

interest pursuant to the Additional Payments provision until it has tendered or paid that sum.

10
 Lunde states that the insurer’s “payment into circuit court of policy limits would be inadequate to stop the
accumulation of interest,” because that payment did not include accumulated interest. 297 S.W.3d at 93. Despite this
statement, this Court affirmed a circuit court judgment which terminated the insurer’s liability for post-judgment
interest on the date the insurer “paid its policy limits into the circuit court on November 22, 2005.” Id. at 92-93.
Despite any stray comment suggesting otherwise, the holding of Lunde is consistent with Levin and the other cases
cited in the text.

 12
Norman arrives at the $150,000.00 figure by aggregating the per person limit of liability for bodily

injury ($100,000.00) with the policy cap for property damage ($50,000.00). This argument lacks

any merit. In this equitable garnishment action, Norman seeks to recover only for the monetary

liability imposed by the judgment in her underlying wrongful death lawsuit against Ralston and

Norman’s counsel acknowledged at oral argument that no recovery for property damage was

contained in the underlying suit against Ralston. Thus, the $50,000.00 limit of liability applicable

to a property damage claim is not germane to this situation.

 The “limit of liability” applicable to this garnishment action is $100,000.00. Progressive’s

payment of that amount to Norman satisfied its obligations under the relevant Additional Payments

provision and, upon such payment, its contractual duty to pay post-judgment interest under the

policy was terminated.

 Point III is denied.

 Conclusion
 The trial court’s grant of summary judgment in Progressive’s favor is reversed and the case

is remanded for further proceedings consistent with this opinion.

 __________________________________________
 EDWARD R. ARDINI, JR., JUDGE

Judge Witt concurs.
Judge Ahuja concurs in a separate concurring opinion

 13
 IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
SYLVIA NORMAN, )
 )
 Appellant, )
 )
v. ) WD83345 (Consolidated with WD83378)
 )
PROGRESSIVE PREFERRED ) Opinion filed: March 2, 2021
INSURANCE COMPANY, )
 )
 Respondent, )
 )
AMBER RALSTON, )
 )
 Appellant. )

 CONCURRING OPINION

 I concur in Judge Ardini’s opinion for the Court. I write separately to explain more fully

the basis for my concurrence.

 Resolution of the primary issue in this appeal requires interpretation of the statement in

Progressive’s policy that its liability for pre-judgment interest terminates “[i]f we make an offer to

pay our limit of liability.” I believe that the policy’s reference to “an offer to pay” is fairly

susceptible to multiple constructions, is accordingly ambiguous, and must be construed in favor of

Progressive’s insured.

 As the majority opinion explains, multiple cases have held that a policy’s reference to an

“offer to pay” policy limits denotes an unconditional offer to pay – not an offer conditioned on the
injured party’s agreement to release the insured. See, e.g., Davis v. Allstate Ins. Co., 747 N.E.2d

141, 148-49 (Mass. 2001); Sours v. Russell, 967 P.2d 348, 355 (Kan. App. 1998); Safeway Ins.

Co. of Ala., Inc. v. Amerisure Ins. Co., 707 So.2d 218, 220-21 (Ala. 1997); Petry v. Richard, 532

So.2d 286, 289 (La. App. 1988). On the other hand, other cases have held that an insurer’s offer

of its policy limits in settlement constitutes a sufficient “offer to pay” under similar policy

language. See, e.g., Overbeek v. Heimbecker, 101 F.3d 1225, 1227-28 (7th Cir. 1996) (Wisconsin

law); Campbell v. Turner, 744 So.2d 1261, 1263 (Fla. App. 1999).

 The existence of this competing caselaw certainly suggests that the “offer to pay” phrase

“‘is reasonably open to different constructions’” – or in other words, that it is ambiguous. Owners

Ins. Co. v. Craig, 514 S.W.3d 614, 617 (Mo. 2017) (citation omitted). Where, as here, a term in

an insurance policy is ambiguous, that “ambiguity is resolved in favor of the insured.” Id. (citation

omitted). In this case, the ambiguity concerning the interpretation of “offer to pay” must be

resolved in favor of the insured, Ralston, to terminate Progressive’s liability to pay pre-judgment

interest only where it has made an unconditional offer of its policy limits to the injured party.

 Each of these cases interpreting an “offer to pay” involves an insurer’s liability for post-

judgment interest, rather than pre-judgment interest as in this case. But, given the language of

Progressive’s policy, it is not at all clear that the distinction between pre- and post-judgment

interest justifies a different reading of an “offer to pay.” Progressive’s policy uses the same term

– “offer to pay” – to refer to an act which will terminate the insurer’s obligation for both pre- and

post-judgment interest. The policy provides that Progressive’s liability for pre-judgment interest

terminates “[i]f we make an offer to pay our limit of liability”; it also provides that Progressive’s

liability for post-judgment interest will continue “until we have paid, offered to pay, or deposited

 2
in court, that portion of the judgment which does not exceed our limit of liability.” (Emphasis

added.)

 Progressive has not disputed that, after entry of the wrongful death judgment, it could not

terminate its liability for post-judgment interest by offering to settle with Norman for $100,000 –

only an unconditional offer of the policy limits would be sufficient. While Progressive accepts

that a $100,000 settlement offer would not constitute an “offer to pay” for purposes of post-

judgment interest, it nevertheless argues that the same settlement offer constitutes an “offer to pay”

with respect to its liability for pre-judgment interest. We are instructed to “interpret the language

of an insurance policy to mean what a reasonable layperson in the position of the insured would

have thought [it] meant.” Am. Fam. Mut. Ins. Co. v. Sharon, 596 S.W.3d 135, 147 (Mo. App.

W.D. 2020) (citations and internal quotation marks omitted). I question whether a reasonable

layperson would interpret “offer to pay” differently in connection with Progressive’s responsibility

to pay pre- versus post-judgment interest – two closely related (albeit distinct) contexts. If

Progressive intended to treat its liability for pre- and post-judgment interest differently, and

provide that its liability for pre-judgment interest would terminate when it offered its policy limits

in settlement, it could – and should – have said that in plain language.

 Progressive has argued on appeal that it would have violated its duty of good faith and fair

dealing if it had made an unconditional offer of the policy limits to Norman. It cites Millers Mutual

Insurance Association of Illinois v. Shell Oil Co., 959 S.W.2d 864 (Mo. App. E.D. 1997), to

support this argument. I am skeptical that a lay consumer would interpret Progressive’s policy

language by resort to caselaw. But even if it were relevant, Millers Mutual suggests that

Progressive could have unconditionally offered Norman its policy limits, consistent with its

fiduciary obligations to its insured Ralston.

 3
 In Millers Mutual, this Court held that an insurer’s duty to defend terminated when the

insurer exhausted its policy limits by settling claims against only one of its two insureds. We held

that, after the settlement, the insurer had no continuing duty to defend the other insured, who

remained subject to a liability claim. Millers Mutual stressed, however, that the insurer had

attempted to secure the release of all insureds within its policy limits, and had not simply paid out

the policy limits to the injured party. The Court explained:

 A policy may specifically provide for termination of a duty to defend upon
 payment of the policy limits, but public policy requires the insurer to act in good
 faith in the interest of all insureds under the policy. Millers acted in good faith in
 strictly complying with the unambiguous language of the policy issued. This is not
 a case in which the insurer attempted to tender the limits into court for the
 purpose of totally avoiding its duty to defend. Millers attempted to obtain a
 settlement on behalf of [both insureds] and upon the plaintiffs' refusal, it made a
 reasonable settlement on behalf of [only one] insured for the policy limits. The
 unambiguous policy language allows Millers to terminate its duty to defend upon
 exhaustion. We hold an insurer relying on unambiguous policy language may
 terminate its duty to defend an additional insured when the policy limits are
 exhausted in a good faith settlement on behalf of the named insured.

959 S.W.2d at 871-72 (emphasis added).

 Millers Mutual holds that an insurer acts consistently with its duty of good faith if the

insurer pays its policy limits to an injured party in only partial satisfaction of the injured party’s

claim, so long as the insurer has first attempted to obtain a complete release on behalf of all

insureds. Applied to this case, Millers Mutual would have allowed Progressive to tender its policy

limits to Norman without conditions, after its good-faith settlement offer had been rejected.

Significantly, in this case, unlike in Millers Mutual, Progressive’s insurance policy contains no

provision terminating the insurer’s duty to defend when the policy limits are exhausted. Thus,

Progressive would have had a continuing duty to defend Ralston against Norman’s claims, even

after paying its policy limits to Norman. Progressive’s unconditional payment would not have left

Ralston defenseless – the concern expressed in Millers Mutual.

 4
 I concur in the Court’s opinion because the language of Progressive’s policy can reasonably

be read to require that the insurer unconditionally offer its applicable policy limit to an injured

claimant in order to terminate its liability for pre-judgment interest, and because Progressive could

have made such an unconditional payment without violating its fiduciary obligations to its insured.

 Alok Ahuja, Judge

 5